T.C. Memo. 1997-445


UNITED STATES TAX COURT


BOYD GAMING CORPORATION, F.K.A. THE BOYD GROUP
AND SUBSIDIARIES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


CALIFORNIA HOTEL & CASINO AND SUBSIDIARIES, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 3433-95, 3434-95.        Filed September 30, 1997.


        Ps provide free meals to their employees in
private cafeterias located on Ps' business premises.
R determined that sec. 274(n)(1), I.R.C., limits Ps'
deduction for the cost of these meals.  Ps argue that
they may deduct 100 percent of their costs under the de
minimis fringe benefit exception of sec. 274(n)(2)(B),
I.R.C., which requires in this case that Ps provide the
meals to each of substantially all of their employees
for a substantial noncompensatory business reason.
<u>Held</u>:  Ps' deduction is limited by sec. 274(n)(1),
I.R.C.; the de minimis fringe benefit exception of sec.
274(n)(2)(B), I.R.C., is inapplicable under the facts
herein because Ps do not provide the meals to each of
substantially all of their employees for a substantial
noncompensatory business reason.

Thomas P. Marinis, Jr., J. Barclay Collins III,

Sarah A. Duckers, and Charles L. Almond, for petitioners.

Paul L. Dixon and Barbara S. Trethewy, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  The docketed cases are before the Court consolidated for purposes of trial, briefing, and opinion. California Hotel & Casino (CHC) petitioned the Court to redetermine respondent's determination of deficiencies of $81,761, $14,428, and $42,124 in its consolidated group's 1982, 1984, and 1987 Federal income tax, respectively.  Boyd Gaming Corp. (Boyd) petitioned the Court to redetermine respondent's determination of a $152,346 deficiency in its consolidated group's 1988 Federal income tax.

Following concessions by the parties, we must decide whether petitioners' deductions for food and beverages provided to their employees without charge on petitioners' business premises are limited by section 274(n)(1).  In Boyd Gaming Corp. v. Commissioner, 106 T.C. 343, 344, 349 (1996), we held in summary adjudication that section 274(n)(1) does not limit petitioners' deductions if the food and beverages are a de minimis fringe benefit under section 274(n)(2), which, in turn, requires that petitioners provide the food and beverages to each of substantially all of their employees for the "convenience of the

employer" under section 119.[1]  We hold herein that petitioners do not provide the food and beverages to each of substantially all of their employees for the convenience of the employer, and, hence, that petitioners' deductions are limited by section 274(n)(1) because the food and beverages are not a de minimis fringe benefit under section 274(n)(2)(B).  Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference.  The record consists mainly of these stipulated facts and exhibits and the testimony of numerous witnesses, all of whom were called by petitioners. Petitioners' primary witnesses were:  (1) Robert Boughner, petitioners' executive vice president during the subject years, (2) John Repetti, CHC's casino manager during the subject years, (3) Steve Thompson, the general manager of Fremont Hotel & Casino (Fremont) during the subject years, (4) Bruce Fraser, the assistant general manager of Sam's Town Hotel & Gambling Hall

---

[1] The President recently signed into law the Taxpayer Relief Act of 1997 (the 1997 Act), Pub. L. 105-23, 111 Stat. 788. Sec. 970 of the 1997 Act, 111 Stat. 897, effective for taxable years beginning after Dec. 31, 1997, amended sec. 132(e)(2) so that the cost of a meal provided to an employee for the convenience of the employer may be deducted in full.  This amendment parallels the Court's holding in Boyd Gaming Corp. v. Commissioner, 106 T.C. 343, 344, 349 (1996).

(Sam's Town) during the subject years, (5) John Miner, who joined the Stardust Hotel & Casino (Stardust) in July 1988 and served as its general manager throughout the remainder of the subject period, and (6) Mary Ann Burns, who joined the Stardust in October 1988 and served as its director of hotel operations throughout the remainder of the subject period.

CHC and Boyd are Nevada corporations whose principal offices were in Las Vegas, Nevada, when they petitioned the Court. For its taxable year ended June 30, 1988 (the 1987 taxable year), CHC was the parent of an affiliated group of corporations that filed a consolidated Federal income tax return. CHC's affiliated group included: (1) Sam-Will, Inc., doing business as Fremont, and (2) Mare-Bear, Inc., doing business as Stardust. CHC also did business as Sam's Town. By virtue of a reorganization of the group, Boyd became the parent of the affiliated group beginning with the 1988 taxable year. Boyd's affiliated group included: (1) CHC, which sometimes did business as Sam's Town, (2) Sam-Will, Inc., doing business as Fremont, and (3) Mare-Bear, Inc., doing business as Stardust.

Petitioners operate CHC, Fremont, Sam's Town, and Stardust (collectively, the Properties). Each of the Properties is a large resort or hotel complex located in Las Vegas, Nevada. CHC and Fremont are located downtown. Stardust is located a "stone's throw" away from CHC and Fremont, in an area commonly known as "the Strip". Sam's Town is located approximately 6 miles from the Strip and approximately 6 miles from downtown.

Each of the Properties has casino, restaurant, and hotel facilities; the hotel rooms tend to run at close to full occupancy, and the hotel guests tend to "turn over" weekly. Some of the Properties also have convention and/or entertainment facilities. As of June 30, 1989, CHC had 635 hotel rooms, 222 R.V. parking spaces, four restaurants, two lounges, 35 gaming tables, 81 keno seats, 18 race and sports book seats, and 970 slot machines. Fremont had 450 hotel rooms, five restaurants, one lounge, 48 gaming tables, 58 keno seats, 142 race and sports book seats, and 952 slot machines. Stardust had 1,367 hotel rooms, 370 R.V. parking spaces, six restaurants, one showroom, one lounge, 84 gaming tables, 105 keno seats, 300 race and sports book seats, and 1,324 slot machines. Sam's Town had 204 hotel rooms, 508 R.V. parking spaces, eight restaurants, one lounge, 57 gaming tables, 166 keno seats, 193 race and sports book seats, and 1,892 slot machines. Sam's Town also had a 56-lane bowling alley and a 25,000-square-foot retail area called the Western Emporium.

Each of the Properties is located in a heavily populated area of Las Vegas near numerous eating facilities, including fast food restaurants, competitor casino restaurants, ethnic restaurants, sandwich shops, pizza houses, food courts, and convenience stores. Many of these eating facilities serve meals 24 hours a day. The aggregate seating capacity of the eating facilities, exclusive of the casino restaurants, near Stardust and Sam's Town is in both cases more than 1,100 diners. The

aggregate seating capacity of the eating facilities, exclusive of the casino restaurants, near CHC and Fremont is in both cases more than 650 diners. The record does not disclose the seating capacity of the casino restaurants near CHC, Fremont, Stardust, or Sam's Town. CHC and Fremont have 11 competitor casinos situated nearby, and these competitors house numerous restaurants offering an assortment of meals including fast food, ethnic food, buffet food, sandwiches, and pizza. The same assortment of restaurants is present in the 11 competitor casinos located near Stardust. Sam's Town has two competitor casinos nearby, one of which has a pasta buffet, a cafeteria, and a delicatessen.

Most of the major casinos in Las Vegas provide meals to their employees at no charge in private eating facilities located on the casinos' premises. In order to attract and keep employees, petitioners offer compensation and benefits packages to their employees that are highly competitive with those of other similar employers. Included in these packages is the benefit of a meal or meals during, and/or in some cases before or after, an employee's shift. Petitioners opted before the subject years to provide meals to all of their employees after it was decided, by the management of the affiliated group's parent, that petitioners would generally require their employees to stay on the premises throughout their shifts and that it was unreasonable to require full-time employees to stay on the premises for an 8-hour shift without offering them meals. Management believed that it was essential to petitioners' operations that 75 to 80

percent of their employees (by name and not by number) stay on the premises throughout their shifts, and that these employees deserved meals for having to stay on the premises. Management also believed that it was not essential to petitioners' operation to keep the remaining 20 to 25 percent of the employees on the premises throughout their shifts, but petitioners would generally require these employees to stay on the premises, and offer them meals, as a matter of consistency. The meals that petitioners provide to their employees include hot meals, cold foods, and snacks (collectively referred to as the meals). Petitioners provide the meals to their employees as a form of compensation, and petitioners' provision of the meals is not discriminatory in favor of highly compensated employees.

Petitioners provide the meals to the employees at each Property in a private employee cafeteria (the Cafeteria) that is located on the Property's premises. Each of the Properties owns and operates its Cafeteria, and each Cafeteria is separate from the public restaurants located on the Properties, which, in turn, are separate from the alcohol bars on the premises. Employees receive the meals without charge, and it is petitioners' policy to provide the meals in the Cafeterias only to employees. Petitioners occasionally serve in the Cafeterias the surplus food from their banquets or buffets. Petitioners do not quantify the amount of surplus food consumed in the Cafeterias, and they do not accurately account for any of the food served in the Cafeterias. Petitioners keep no records that identify how many

meals are served in the Cafeterias, who eats in the Cafeterias, how many times an employee eats in the Cafeterias, or on what day an employee eats in the Cafeterias. Petitioners keep no records that show that an employee eats in the Cafeteria only on the days that he or she works. Petitioners' employees do not have to eat the meals served in the Cafeterias. Petitioners' employees may eat, in or outside of the Cafeterias, food brought onto the Properties.

The Cafeterias seat approximately the following number of people:

| | |
|---|---|
| Cafeteria at CHC | 65-90 |
| Cafeteria at Fremont | 92 |
| Cafeteria at Sam's Town | 200-250 |
| Cafeteria at Stardust | 160-180 |

Each of the Cafeterias is open 7 days a week, 24 hours per day, except when closed for cleaning. Cleaning occurs once a week on the graveyard shift (as defined below), during which time employees are allowed to eat in the public restaurants. In addition to the right to eat in the Cafeterias, approximately 10 percent of petitioners' employees (generally management and supervisory employees) also may eat in the Properties' public restaurants. Petitioners do not allow other employees to eat in these public restaurants while on duty, except when a Cafeteria is closed for cleaning. Petitioners keep no records that identify how many meals are served to employees in the public restaurants, the employees who actually eat in the public restaurants, how many times an employee eats in the public

restaurants, or on what day an employee eats in the public restaurants. Petitioners keep no records that show that an employee who is allowed to eat in the public restaurants eats there only on the days that he or she works.

It is petitioners' policy that employees may enter the Cafeterias freely whenever they are open, and that employees need not sign in at a Cafeteria upon entrance or sign for food when received. It is petitioners' policy that employees may not eat in the Cafeterias on a nonworking day or bring guests to eat in the Cafeterias at all. It is petitioners' policy that employees who violate the policy of the Cafeterias are subject to dismissal. Petitioners do not formally monitor any of the policies for the Cafeterias. Petitioners oversee each employee's adherence to these policies through an honor system and an informal policing that is incidental to an employee's presence in the Cafeteria. Employees have been disciplined, suspended, and/or dismissed from employment for violating petitioners' policies for the Cafeterias.

Petitioners employed the following numbers of people at the Properties in 1988 and 1989:

|            | 1988  | 1989  |
|------------|-------|-------|
| CHC        | 1,002 | 1,052 |
| Fremont    | 936   | 878   |
| Sam's Town | 1,402 | 1,508 |
| Stardust   | 2,251 | 2,406 |

The table below has a breakdown of these employees by Property, job classification, job code, and job description. The table

also lists the number of meals that each employee is entitled to receive during his or her shift (or whether the employee is authorized to eat in the public restaurants on the Properties for a reason other than that the Cafeterias are closed for cleaning), the minutes that the employee receives for meals and other breaks, and the number of employees who wear uniforms at work (at other than Sam's Town).  The record does not indicate which employees at Sam's Town wear uniforms during work.  An appendix to petitioners' brief lists the employees at Sam's Town who petitioners allege wear uniforms.  This appendix, however, is not evidence, Rule 143(b), and we give no consideration to it.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Accounting | 400A | ACCT CLK IV | No | 5 | 6 | 1 | 60 | 0 |
| Accounting | 402 | ACCTG CLERK II | No | 10 | 2 | 1 | 60 | 0 |
| Accounting | 401 | ACCTG CLK III | No | 10 | 17 | 1 | 60 | 0 |
| Accounting | 303E | ACT CLK SUPV | No | 2 | 3 | 0 | 60 | 0 |
| Accounting | 167E | ASST CONTROLLER | No | 1 | 1 | 0 | 60 | 0 |
| Accounting | 300 | CHIEF ACCT | No | 0 | 1 | 1 | 60 | 0 |
| Accounting | 166E | CONTROLLER | No | 1 | 1 | 0 | 60 | 0 |
| Accounting | 168E | PAYROLL SUPV | No | 1 | 1 | 0 | 60 | 0 |
| Accounting | 519 | RECEIVER | Yes | 5 | 5 | 1 | 60 | 0 |
| Accounting | 546 | STOCK CLERK | Yes | 4 | 4 | 1 | 60 | 0 |
| Administrative | 285 | ADMIN CLRK | No | 2 | 1 | 1 | 60 | 0 |
| Administrative | 172E | DIR HUM RES | No | 0 | 1 | 0 | 60 | 0 |
| Administrative | 057 | EMP RELATIONS DEV MGR | No | 1 | 0 | 1 | [2] | [2] |
| Administrative | 184 | EMPL RELATIONS MGR | No | 0 | 1 | 1 | 60 | 0 |
| Administrative | 101 | HR SPCLST | No | 0 | 4 | 1 | 60 | 0 |
| Administrative | 277E | OFFICE MGR | No | 0 | 1 | 0 | 60 | 0 |
| Administrative | 306 | PURC AGENT | No | 2 | 2 | 1 | 60 | 0 |
| Administrative | 282 | SECRETARY | No | 6 | 6 | 1 | 60 | 0 |
| Casino | 253E | ASST R/S MGR | No | 0 | 1 | 0 | 60 | 0 |
| Casino | 281E | ASST SLOT MGR | Yes | 1 | 1 | 0 | 60 | 0 |
| Casino | 314 | AST CAG SHFT | Yes | 3 | 3 | 1 | 60 | 0 |
| Casino | 252E | AST CAG/CRED | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 154E | AST CASINO MGR | No | 1 | 1 | 0 | 30 | 1(30) |
| Casino | 258 | AST COIN MGR | Yes | 2 | 2 | 1 | 60 | 0 |
| Casino | 311 | BOXPERSON | Yes | 8 | 7 | 1 | [2] | 7(20) |
| Casino | 313E | CAG SHFT SUPV | No | 3 | 3 | 0 | 60 | 0 |
| Casino | 431 | CAGE CASHIER | Yes | 36 | 45 | 1 | 60 | 0 |
| Casino | 157E | CAGE/CRED MGR | No | 1 | 1 | 0 | 60 | 0 |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Casino | 310E | CASINO FLOOR SUPERVISOR | No | 20 | 21 | 0 | 30 | 1(30) |
| Casino | 153E | CASINO MGR | No | 1 | 1 | 0 | 30 | 1(30) |
| Casino | 156E | CASN PIT BOSS | No | 6 | 6 | 0 | 30 | 1(30) |
| Casino | 155E | CASN SHFT MGR | No | 3 | 3 | 0 | 30 | 1(30) |
| Casino | 438 | CHANGE ATTDT | Yes | 71 | 68 | 1 | 30 | 2(15) |
| Casino | 195 | COIN RM MGR | Yes | 1 | 1 | 1 | 60 | 0 |
| Casino | 107 | COIN ROOM MAINT | Yes | 0 | 1 | 1 | 60 | 0 |
| Casino | 443 | CREDIT CLERK | Yes | 1 | 2 | 1 | 60 | 0 |
| Casino | 442 | CREDIT CLERK II | No | 1 | 1 | 1 | 60 | 0 |
| Casino | 441 | CREDIT CLERK III | No | 1 | 1 | 1 | 60 | 0 |
| Casino | 453 | DEALER 21 | Yes | 98 | 90 | 1 | [2] | 7(20) |
| Casino | 452 | DEALER DICE | Yes | 55 | 55 | 1 | [2] | 7(20) |
| Casino | 095E | DIR GAMING SCHOOL | No | 0 | 1 | 0 | 60 | 0 |
| Casino | 105 | GAMING SCH INSTR | No | 0 | 2 | 1 | 60 | 0 |
| Casino | 106 | GAMING SCHOOL INSTRUCTO | No | 3 | 0 | 1 | [2] | [2] |
| Casino | 465 | HRD COUNT ATN | Yes | 7 | 9 | 1 | 60 | 0 |
| Casino | 321 | KENO 2ND | Yes | 3 | 0 | 1 | [2] | [2] |
| Casino | 474 | KENO 3RD | Yes | 2 | 0 | 1 | [2] | [2] |
| Casino | 473E | KENO COMP STA | Yes | 0 | 3 | 0 | 60 | 0 |
| Casino | 562 | KENO HOST | Yes | 1 | 1 | 1 | 60 | 0 |
| Casino | 186E | KENO MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 320E | KENO SHFT MGR | No | 3 | 3 | 0 | 60 | 0 |
| Casino | 475 | KENO WRITER | Yes | 32 | 29 | 1 | 30 | 2(15) |
| Casino | 170 | MASTR SLOT TEC | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 517 | R/S TELLER | Yes | 3 | 3 | 1 | 60 | 0 |
| Casino | 158E | RACE/SPORTS MANAGER | No | 1 | 0 | 0 | [2] | [2] |
| Casino | 359 | SLOT AREA SUPV | Yes | 0 | 6 | 1 | 60 | 0 |
| Casino | 574 | SLOT CLUB ATTD | Yes | 0 | 7 | 0 | 60 | 0 |
| Casino | 317 | SLOT FLRPRSN | Yes | 24 | 0 | 1 | [2] | [2] |
| Casino | 316 | SLOT HOST | No | 3 | 4 | 1 | 60 | 0 |
| Casino | 169E | SLOT MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 627 | SLOT SERVICE ATTD | Yes | 0 | 26 | 1 | 60 | 0 |
| Casino | 315E | SLOT SHFT MGR | No | 4 | 4 | 0 | 60 | 0 |
| Casino | 538 | SLOT TECH I | Yes | 2 | 6 | 1 | 60 | 0 |
| Casino | 537 | SLOT TECH II | Yes | 3 | 2 | 1 | 60 | 0 |
| Casino | 187E | SPORTS BK MGR | No | 0 | 1 | 0 | 30 | 1(30) |
| Engineering | 259E | AST FCLTY MGR | Yes | 1 | 1 | 0 | 30 | 2(15) |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.
[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Engineering | 160E | FACILITY MGR | Yes | 1 | 1 | 0 | 30 | 1(30) |
| Engineering | 479 | LABORER | Yes | 3 | 5 | 1 | 30 | 2(15) |
| Engineering | 491 | MAINT ENG HELPER | Yes | 0 | 1 | 1 | 30 | 2(15) |
| Engineering | 490 | MAINT ENGINEER | Yes | 11 | 11 | 1 | 30 | 2(15) |
| Engineering | 501 | PAINTER | Yes | 1 | 2 | 1 | 30 | 2(15) |
| Engineering | 605 | SHOP CARP II | Yes | 0 | 1 | 1 | 30 | 2(15) |
| Engineering | 606 | SHOP CARP II | Yes | 1 | 0 | 1 | [2] | [2] |
| Executive | 014E | EX VP/GEN MGR | No | 1 | 1 | 0 | 60 | 0 |
| Executive | 279E | EXEC SECRTY | No | 2 | 2 | 0 | 60 | 0 |
| Food & Bevera | 201E | ASST FD DIRECTOR | No | 0 | 1 | 0 | 60 | 0 |
| Food & Bevera | 262 | AST CHEF | Yes | 2 | 1 | 1 | 60 | 0 |
| Food & Bevera | 558 | BANQ SERVER | Yes | 0 | 1 | 1 | 30 | 2(15) |
| Food & Bevera | 416 | BAR BACK | Yes | 5 | 0 | 1 | [2] | [2] |
| Food & Bevera | 415 | BARTENDER | Yes | 13 | 20 | 1 | 60 | 0 |
| Food & Bevera | 165E | BEV MGR | No | 0 | 1 | 0 | 30 | 0 |
| Food & Bevera | 428 | BUS PERSON | Yes | 43 | 43 | 1 | 40 | 1(20) |
| Food & Bevera | 437 | CASHIER-FD | Yes | 7 | 7 | 1 | 60 | 0 |
| Food & Bevera | 439 | COCKTAIL SERV | Yes | 35 | 29 | 1 | 60 | 0 |
| Food & Bevera | 455 | DINING RM RUN | Yes | 0 | 4 | 1 | 60 | 0 |
| Food & Bevera | 164E | EXECUTVE CHEF | Yes | 1 | 1 | 0 | 60 | 0 |
| Food & Bevera | 162E | FD/BEV DIR | No | 1 | 1 | 0 | 60 | 0 |
| Food & Bevera | 352E | FOD SHFT SUP | No | 4 | 6 | 0 | 30 | 0 |
| Food & Bevera | 461 | FOOD SERVER | Yes | 49 | 43 | 1 | 40 | 1(20) |
| Food & Bevera | 353 | HOST PERSON | Yes | 15 | 15 | 1 | 40 | 1(20) |
| Food & Bevera | 425 | KIT RUNNER | Yes | 0 | 1 | 1 | 60 | 1(20) |
| Food & Bevera | 478 | KITCHN HELP | Yes | 37 | 36 | 1 | 40 | 1(20) |
| Food & Bevera | 477 | LD KIT HELP | Yes | 1 | 3 | 1 | 40 | 1(20) |
| Food & Bevera | 480 | LD LINE COOK | Yes | 2 | 5 | 1 | 40 | 1(20) |
| Food & Bevera | 488 | LINE COOK | Yes | 12 | 13 | 1 | 40 | 1(20) |
| Food & Bevera | 510 | PREP COOK 1 | Yes | 14 | 17 | 1 | 60 | 0 |
| Food & Bevera | 509 | PREP COOK II | Yes | 6 | 8 | 1 | 40 | 1(20) |
| Food & Bevera | 508 | PREP COOK III | Yes | 3 | 5 | 1 | 40 | 1(20) |
| Food & Bevera | 351E | RESTAURANT MGR | No | 1 | 0 | 0 | [2] | [2] |
| Food & Bevera | 539 | SNAC BAR ATDN | Yes | 11 | 10 | 1 | 60 | 0 |
| Food & Bevera | 354E | SOUS CHEF | Yes | 1 | 3 | 0 | 60 | 0 |
| Food & Bevera | 541 | SPEC BUS PERS | Yes | 9 | 9 | 1 | 30 | 0 |
| Food & Bevera | 542 | SPEC FD SERVR | Yes | 16 | 14 | 1 | 30 | 0 |
| Food & Bevera | 543 | SPEC LD LN CK | Yes | 2 | 2 | 1 | 60 | 0 |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Food & Bevera | 544 | SPEC LINE CK | Yes | 4 | 4 | 1 | 60 | 0 |
| Hotel | 257E | AST EXEC HSKG | No | 0 | 1 | 0 | 60 | 0 |
| Hotel | 419 | BELL PERSON | Yes | 8 | 8 | 1 | 40 | 2(10) |
| Hotel | 565 | CAR WASHER | No | 0 | 9 | 1 | 60 | 0 |
| Hotel | 446 | CUSTODIAN I | Yes | 39 | 0 | 1 | [2] | [2] |
| Hotel | 445 | CUSTODIAN II | Yes | 11 | 54 | 1 | 30 | 2(15) |
| Hotel | 198E | DIR HTL OPRTN | No | 0 | 1 | 0 | 45-60 | 0 |
| Hotel | 256E | EXECUT HSKPR | No | 1 | 1 | 0 | 60 | 0 |
| Hotel | 204 | FRONT DESK SUPV | No | 0 | 1 | 1 | 60 | 0 |
| Hotel | 575 | GARAGE BOOTH ATTD | Yes | 0 | 1 | 1 | 60 | 0 |
| Hotel | 464 | GUEST RM ATND | Yes | 62 | 62 | 1 | 30 | 2(15) |
| Hotel | 333 | GUEST ROOM SUPERVISOR | Yes | 6 | 6 | 1 | 30 | 2(15) |
| Hotel | 472 | HOTEL CLERK I | No | 4 | 4 | 1 | 60 | 0 |
| Hotel | 471 | HOTEL CLK II | Yes | 11 | 10 | 1 | 60 | 0 |
| Hotel | 191E | HOTEL MGR | No | 1 | 0 | 0 | [2] | [2] |
| Hotel | 481E | LD PARK ATDNT | Yes | 1 | 1 | 0 | 30 | 2(15) |
| Hotel | 336 | LEAD CUSTODIAN | Yes | 3 | 0 | 1 | [2] | [2] |
| Hotel | 335 | LEAD CUSTODIAN | Yes | 0 | 3 | 1 | 60 | 0 |
| Hotel | 489 | LINEN RM ADTN | Yes | 2 | 2 | 1 | 60 | 0 |
| Hotel | 268 | MGR CUST SVC | No | 1 | 1 | 1 | 60 | 0 |
| Hotel | 502E | PARKG ATDNT | Yes | 5 | 5 | 0 | 30 | 2(15) |
| Hotel | 194 | PBX MANAGER | No | 1 | 1 | 1 | 60 | 0 |
| Hotel | 503 | PBX OPERATOR | No | 8 | 8 | 1 | 60 | 0 |
| Hotel | 255E | ROOM RESERV MGR | No | 1 | 1 | 0 | 60 | 0 |
| Hotel | 525 | RV PARK ATTD | No | 1 | 1 | 1 | 60 | 0 |
| Hotel | 523 | RV PARK CLRK | No | 3 | 3 | 1 | 60 | 0 |
| Hotel | 524 | RV PARK LD ATTD | No | 3 | 1 | 1 | 60 | 0 |
| Hotel | 193 | RV PARK MGR | No | 1 | 1 | 1 | 60 | 0 |
| MIS | 440A | COMPUTR OPRTR | No | 3 | 3 | 1 | 60 | 0 |
| MIS | 304E | D P SUPERV | No | 1 | 1 | 0 | 60 | 0 |
| MIS | 534A | SR COMP OPERT | No | 1 | 1 | 1 | 60 | 0 |
| Sales & Market | 209E | ADV & PUB MGR | No | 1 | 1 | 0 | 60 | 0 |
| Sales & Market | 196E | DIR AD/PB/PRO | No | 1 | 1 | 0 | 60 | 0 |
| Sales & Market | 177E | DIR SALES | No | 0 | 1 | 0 | 60 | 0 |
| Sales & Market | 339A | GRP SALES MGR | No | 1 | 1 | 1 | 60 | 0 |
| Sales & Market | 463A | GRP SALES REP | No | 2 | 3 | 1 | 60 | 0 |

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Sales & Market | 512 | PROMOTIONS ATTD | No | 3 | 0 | 1 | [2] | [2] |
| Sales & Market | 338 | PUBLICITY/PROMO/ADV ASST | No | 1 | 0 | 1 | [2] | [2] |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Security | 261E | ASST SECURITY MGR | No | 1 | 1 | 0 | 60 | 0 |
| Security | 159E | SECURITY MANAGER | No | 1 | 1 | 0 | 60 | 0 |
| Security | 532 | SECURITY DISPATCHER | Yes | 4 | 4 | 1 | 60 | 0 |
| Security | 533 | SECURITY OFF/IN | Yes | 14 | 16 | 1 | 60 | 0 |
| Security | 552 | SECURITY OFFICER-OUT | Yes | 15 | 17 | 1 | 60 | 0 |
| Security | 331E | SECURITY SHFT | No | 4 | 3 | 0 | 60 | 0 |
| Security | 548 | SURVEIL AGENT | No | 3 | 2 | 1 | 60 | 0 |
| Total | | | | 1,002 | 1,052 | | | |

FREMONT

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Accounting | 400A | ACCT CLK IV | No | 5 | 5 | 1 | 60 | [2] |
| Accounting | 401A | ACCTG CLK III | No | 10 | 10 | 1 | 60 | [2] |
| Accounting | 403 | ACCTG CLRK I | No | 4 | 4 | 1 | 60 | [2] |
| Accounting | 402A | ACCTG CLRK II | No | 11 | 10 | 1 | 60 | [2] |
| Accounting | 303 | ACCTG CLRK V | No | 1 | 1 | 1 | 60 | [2] |
| Accounting | 167 | ASST CONTROLLER | No | 1 | 0 | 1 | [2] | [2] |
| Accounting | 166E | CONTROLLER | No | 1 | 1 | 0 | 60 | [2] |
| Accounting | 301 | INVNTRY CNTRL | No | 1 | 1 | 1 | 60 | [2] |
| Accounting | 168A | PAYROLL SUPV | No | 1 | 1 | 1 | 60 | [2] |
| Accounting | 519 | RECEIVER | Yes | 4 | 3 | 1 | 30 | 2(15) |
| Accounting | 300 | SR ACCOUNTANT | No | 1 | 2 | 1 | 60 | [2] |
| Administrative | 285 | ADMIN CLERK | No | 1 | 1 | 1 | 60 | [2] |
| Administrative | 172E | DIR INTOPRN/HUM RES | No | 1 | 1 | 0 | 60 | [2] |
| Administrative | 176 | EMP REL/DEVMT | No | 0 | 1 | 1 | 60 | [2] |
| Administrative | 057 | EMPL REL MGR | No | 1 | 0 | 1 | 60 | [2] |
| Administrative | 568 | EMPLMT CLRK | No | 0 | 1 | 1 | 60 | [2] |
| Administrative | 101 | HR SPECIALIST | No | 0 | 1 | 1 | 60 | [2] |
| Administrative | 306 | PURC AGENT | No | 2 | 2 | 1 | 60 | [2] |
| Administrative | 290 | RECEPTIONIST | No | 1 | 0 | 1 | 60 | [2] |
| Administrative | 282 | SECRETARY | No | 4 | 5 | 1 | 60 | [2] |

| Casino | 406 | ADM TERM OPTR | Yes | 4 | 3 | 1 | 60 | [2] |
|--------|-----|---------------|-----|---|---|---|----|-----|
| Casino | 252 | ASST CAGE/CREDIT | No | 1 | 1 | 1 | 60 | [2] |
| Casino | 253 | ASST R/S MGR | No | 1 | 1 | 1 | 60 | [2] |
| Casino | 314 | AST CAG SHFT | No | 1 | 0 | 1 | 60 | [2] |
| Casino | 258 | AST COIN MGR | No | 1 | 1 | 1 | 60 | [2] |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.
[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Casino | 422 | BINGO AGENT | Yes | 11 | 0 | 1 | [2] | [2] |
| Casino | 190E | BINGO MGR | No | 1 | 1 | 0 | 60 | [2] |
| Casino | 330 | BINGO SHFT MGR | Yes | 2 | 0 | 1 | [2] | [2] |
| Casino | 311 | BOXPERSON | No | 14 | 11 | 1 | 20 | 7(20) |
| Casino | 404 | BRD PRSN CORD | Yes/No | 2 | 2 | 1 | [2] | [2] |
| Casino | 427 | BRUSHPERSON | No | 3 | 3 | 1 | 60 | [2] |
| Casino | 313 | CAG SHFT SUPV | No | 3 | 3 | 1 | 60 | [2] |
| Casino | 431 | CAGE CASHIER | Yes | 24 | 19 | 1 | 60 | [2] |
| Casino | 157E | CAGE/CRED MGR | No | 1 | 1 | 0 | 60 | [2] |
| Casino | 189E | CARD RM MGR | No | 1 | 1 | 0 | 60 | [2] |
| Casino | 421 | CAROUSEL ATN | Yes | 26 | 15 | 2 | 40 | 2(10) |
| Casino | 310 | CASINO FLOOR SUPERVISOR | No | 18 | 23 | 1 | 40 | [2] |
| Casino | 153E | CASINO MGR | No | 1 | 1 | 0 | 60 | [2] |
| Casino | 156E | CASN PIT BOSS | No | 5 | 5 | 0 | 60 | [2] |
| Casino | 155E | CASN SHFT MGR | No | 4 | 4 | 0 | 60 | [2] |
| Casino | 438 | CHANGE ATTDT | Yes | 35 | 45 | 2 | 40 | 2(10) |
| Casino | 555 | CHG PRSN TRNR | Yes | 1 | 0 | 1 | [2] | [2] |
| Casino | 195 | COIN RM MGR | Yes | 1 | 1 | 1 | 60 | [2] |
| Casino | 326 | CRD SHFT MGR | No | 1 | 3 | 1 | 60 | [2] |
| Casino | 443 | CREDIT CLERK | No | 1 | 2 | 1 | 60 | [2] |
| Casino | 453 | DEALER 21 | Yes | 98 | 110 | 1 | 20 | +7(20) |
| Casino | 452 | DEALER DICE | Yes | 35 | 37 | 1 | 20 | +7(20) |
| Casino | 451 | DEALER-CRD RM | Yes | 33 | 29 | 1 | 20 | +7(20) |
| Casino | 175E | DIR SLOT OPRN | No | 1 | 1 | 0 | 60 | [2] |
| Casino | 318 | HOSP CNTR SUP | No | 1 | 0 | 1 | [2] | [2] |
| Casino | 465 | HRD COUNT ATN | Yes | 5 | 5 | 1 | 60 | [2] |
| Casino | 321 | KENO 2ND | No | 2 | 0 | 1 | [2] | [2] |
| Casino | 473 | KENO COMP STA | Yes | 0 | 3 | 1 | 60 | [2] |
| Casino | 186E | KENO MGR | No | 1 | 1 | 0 | 60 | [2] |
| Casino | 476 | KENO RUNNER | Yes | 4 | 2 | 1 | 60 | [2] |
| Casino | 320 | KENO SHFT MGR | No | 2 | 2 | 1 | 60 | [2] |
| Casino | 475 | KENO WRITER | Yes | 21 | 17 | 1 | 60 | [2] |
| Casino | 513 | PROP PLAYER | Yes | 3 | 0 | 1 | 20 | 7(20) |
| Casino | 513 | PROP PLAYER | Yes | [2] | 1 | 1 | 60 | [2] |
| Casino | 516 | R/S CASHIER | Yes | 4 | 0 | 1 | [2] | [2] |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.
[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Casino | 323 | R/S SHFT SUPV | No | 1 | 2 | 1 | 60 | [2] |
| Casino | 517 | R/S TELLER | Yes | 11 | 13 | 1 | 60 | [2] |
| Casino | 188E | RACE BOOK MGR | No | 1 | 1 | 0 | 60 | [2] |
| Casino | 158E | RACE/SPORTS MANAGER | No | 1 | 1 | 0 | 60 | [2] |
| Casino | 291 | RUNNER | No | 1 | 1 | 1 | No Runner | [2] |
| Casino | 359 | SLOT AREA SUPV | Yes | 0 | 5 | 1 | 60 | [2] |
| Casino | 574 | SLOT CLUB ATD | Yes | 0 | 8 | 1 | 60 | [2] |
| Casino | 375 | SLOT CLUB SUPV | Yes | 0 | 2 | 1 | 60 | [2] |
| Casino | 317 | SLOT FLRPRSN | Yes | 21 | 17 | 1 | 60 | [2] |
| Casino | 316 | SLOT HOST | No | 3 | 2 | 1 | 60 | [2] |
| Casino | 169E | SLOT MGR | No | 1 | 1 | 0 | 60 | [2] |
| Casino | 315 | SLOT SHFT MGR | No | 3 | 3 | 1 | 60 | [2] |
| Casino | 537 | SLOT TECH II | Yes | 6 | 6 | 1 | 60 | [2] |
| Casino | 187E | SPORTS BK MGR | No | 1 | 0 | 0 | [2] | [2] |
| Casino | 010E | VP CSNO OPRN | No | 1 | 1 | 1 | 60 | [2] |
| Engineering | 259 | AST FCLTY MGR | No | 1 | 1 | 1 | 60 | [2] |
| Engineering | 436 | CARPENTER | Yes | 1 | 1 | 1 | 30 | 2(15) |
| Engineering | 459 | ELECTRICIAN | Yes | 4 | 5 | 1 | 30 | 2(15) |
| Engineering | 160E | FACILITY MGR | No | 1 | 1 | 0 | 60 | [2] |
| Engineering | 479 | LABORER | Yes | 1 | 2 | 1 | 30 | 2(15) |
| Engineering | 490 | MAINT ENGINR | Yes | 8 | 10 | 1 | 30 | 2(15) |
| Engineering | 501 | PAINTER | Yes | 1 | 1 | 1 | 30 | 2(15) |
| Executive | 171E | DIR OPRN | No | 0 | 2 | 0 | 60 | [2] |
| Executive | 014E | EX VP/GEN MGR | No | 1 | 1 | 0 | 60 | [2] |
| Executive | 279A | EXEC SECRTY | No | 1 | 1 | 1 | 60 | [2] |
| Food & Bevera | 265 | AST BEV MGR | No | 1 | 1 | 1 | 60 | [2] |
| Food & Bevera | 262 | AST CHEF | Yes | 1 | 0 | 1 | [2] | [2] |
| Food & Bevera | 416 | BAR BACK | Yes | 4 | 4 | 2 | 60 | [2] |
| Food & Bevera | 415 | BARTENDER | Yes | 14 | 15 | 1 | 60 | [2] |
| Food & Bevera | 165E | BEV MGR | No | 1 | 1 | 0 | 60 | [2] |
| Food & Bevera | 429 | BUS - BUFFET | Yes | 21 | 22 | 2 | 60 | [2] |
| Food & Bevera | 428 | BUS PERSON | Yes | 16 | 19 | 2 | 40 | 1(20) or 2(10) |
| Food & Bevera | 521 | BUTCHER | Yes | 0 | 1 | 2 | 60 | [2] |
| Food & Bevera | 437 | CASHIER-FD | Yes | 8 | 7 | 2 | 60 | [2] |
| Food & Bevera | 439 | COCKTAIL SERV | Yes | 32 | 34 | 2 | 60 | [2] |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Food & Bevera | 455 | DINING RM RUN | Yes | 9 | 8 | 2 | 40 | 1(20) or 2(10) |
| Food & Bevera | 272 | EX KIT STEWARD | Yes | 0 | 1 | 1 | 60 | [2] |
| Food & Bevera | 164E | EXECUTVE CHEF | Yes | 1 | 1 | 0 | 60 | [2] |
| Food & Bevera | 352 | FOD SHFT SUP | No | 3 | 3 | 1 | 60 | [2] |
| Food & Bevera | 163E | FOOD DIR | No | 1 | 1 | 0 | 60 | [2] |
| Food & Bevera | 461 | FOOD SERVER | Yes | 39 | 40 | 2 | 40 | 1(20) or 2(10) |
| Food & Bevera | 353 | HOST PERSON | Yes | 8 | 8 | 2 | 40 | 1(20) or 2(10) |
| Food & Bevera | 478 | KITCHN HELP | Yes | 33 | 19 | 2 | 60 | [2] |
| Food & Bevera | 477 | LD KIT HELP | Yes | 2 | 2 | 2 | 60 | [2] |
| Food & Bevera | 488 | LINE COOK | Yes | 23 | 19 | 2 | 60 | [2] |
| Food & Bevera | 203 | MAITRE'D HOTEL | No | 1 | 0 | 1 | [2] | [2] |
| Food & Bevera | 510 | PREP COOK I | Yes | 3 | 5 | 2 | 60 | [2] |
| Food & Bevera | 509 | PREP COOK II | Yes | 11 | 12 | 2 | 60 | [2] |
| Food & Bevera | 508 | PREP COOK III | Yes | 3 | 2 | 2 | 60 | [2] |
| Food & Bevera | 269 | REST OPER MGR | No | 1 | 1 | 1 | 60 | [2] |
| Food & Bevera | 351E | RESTURNT MGR | No | 1 | 1 | 0 | 60 | [2] |
| Food & Bevera | 539 | SNAC BAR ATDN | Yes | 3 | 4 | 2 | 60 | [2] |
| Food & Bevera | 362 | SPC RM CHEF | Yes | 2 | 2 | 1 | 60 | [2] |
| Food & Bevera | 361 | SPC RM HD PER | No | 0 | 1 | 1 | 60 | [2] |
| Food & Bevera | 541 | SPEC BUS PERS | Yes | 4 | 1 | 2 | 30 | [2] |
| Food & Bevera | 542 | SPEC FD SERVR | Yes | 7 | 5 | 2 | 30 | [2] |
| Food & Bevera | 544 | SPEC LINE CK | Yes | 9 | 9 | 2 | 30 | [2] |
| Food & Bevera | 425 | SPLY RUNNER | Yes | 8 | 8 | 2 | 30 | 1(30) |
| Hotel | 257 | AST EXEC HKSP | No | 1 | 1 | 1 | 60 | [2] |
| Hotel | 418 | BELL CAPTAIN | Yes | 1 | 1 | 2 | 40 | 2(10) |
| Hotel | 419 | BELL PERSON | Yes | 6 | 6 | 2 | 40 | 2(10) |
| Hotel | 446 | CUSTODIAN I | Yes | 31 | 29 | 2 | 40 | 2(10) |
| Hotel | 445 | CUSTODIAN II | Yes | 8 | 9 | 2 | 40 | 2(10) |
| Hotel | 256E | EXECUT HSKPR | No | 1 | 1 | 0 | 60 | [2] |
| Hotel | 204 | FRNT DESK SUPV | No | 0 | 1 | 1 | 60 | [2] |
| Hotel | 464 | GUEST RM ATND | Yes | 35 | 0 | 2 | 40 | 2(10) |
| Hotel | 472 | HOTEL CLK I | Yes | 3 | 3 | 1 | 60 | [2] |
| Hotel | 471 | HOTEL CLK II | Yes | 10 | 9 | 1 | 60 | [2] |
| Hotel | 191E | HOTEL MGR | No | 1 | 1 | 0 | 60 | [2] |
| Hotel | 366 | LD CUSTODIAN | Yes | 2 | 0 | 2 | [2] | [2] |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Hotel | 336 | LD CUSTODIAN | Yes | 0 | 2 | 2 | 40 | 2(10) |
| Hotel | 489 | LINEN RM ATDN | Yes | 3 | 3 | 2 | 40 | 2(10) |
| Hotel | 268 | MGR CUST SVC | No | 1 | 1 | 1 | 60 | [2] |
| Hotel | 502 | PARKG ATDNT | Yes | 13 | 12 | 1 | 40 +/or 30 | 1(20) or 1(30) |
| Hotel | 194 | PBX MANAGER | No | 1 | 1 | 1 | 60 | [2] |
| Hotel | 503 | PBX OPERATOR | No | 6 | 4 | 1 | 60 | [2] |
| Hotel | 255 | RM RESERV MGR | No | 1 | 1 | 1 | 60 | [2] |
| Hotel | 529 | STATUS BD OPR | No | 1 | 1 | 2 | 60 | [2] |
| Hotel | 322 | TRANSP SUPV | No | 0 | 1 | 1 | 60 | [2] |
| MIS | 440A | COMPUTR OPRTR | No | 4 | 4 | 1 | 60 | [2] |
| MIS | 304 | D P SUPERV | No | 1 | 1 | 1 | 60 | [2] |
| Sales & Market | 209E | ADV & PUB MGR | No | 0 | 1 | 1 | 60 | [2] |
| Sales & Market | 196E | DIR AD/PB/PRO | No | 1 | 0 | 0 | [2] | [2] |
| Sales & Market | 463 | GRP SALE REP | No | 1 | 1 | 1 | 60 | [2] |
| Sales & Market | 339E | GRP SALES MGR | No | 1 | 0 | 0 | [2] | [2] |
| Sales & Market | 206E | PROM/SPECIAL EVENTS MGR | No | 1 | 1 | 0 | 60 | [2] |
| Sales & Market | 359 | PROMOT ASST | No | 1 | 0 | 1 | 60 | [2] |
| Sales & Market | 512 | PROMOTION ATN | Yes | 7 | 0 | 1 | 60 | [2] |
| Sales & Market | 368 | PUBL COORD | No | 1 | 0 | 1 | 60 | [2] |
| Sales & Market | 090E | SALES ACCT EX | No | 1 | 0 | 0 | 60 | [2] |
| Sales & Market | 178E | SALES ACCT EX | No | 0 | 1 | 0 | 60 | [2] |
| Sales & Market | 207E | DIR/MGR PUBL | No | 0 | 1 | 0 | 60 | [2] |
| Sales & Market | 492 | DRCT MAIL CLK | No | 0 | 1 | 1 | 60 | [2] |
| Sales & Market | 180A | MKT OPR ANYST | No | 0 | 2 | 1 | 60 | [2] |
| Security | 533 | SECRTY OFF/IN | Yes | 21 | 0 | 1 | 30 | 2(15) |
| Security | 552 | SECRTY OFF/OT | Yes | 0 | 20 | 1 | 20 or 30 | 2(20) or 2(15) |
| Security | 532 | SECURITY DISP | Yes | 0 | 2 | 1 | 60 | [2] |
| Security | 159E | SECURITY MANAGER | No | 1 | 1 | 0 | 60 | [2] |
| Security | 331 | SECURITY SHFT | Yes | 3 | 3 | 1 | 60 | [2] |
| Security | 548 | SURVEIL AGENT | No | 4 | 3 | 1 | 60 | [2] |
| Total | | | | 936 | 878 | | | |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|
| Accounting | 400A | ACCT CLK IV | 4 | 2 | 1 | 60 | 0 |
| Accounting | 303 | ACCT CLK SUPV | 6 | 7 | 1 | 60 | 0 |
| Accounting | 403 | ACCTG CLERK I | 4 | 10 | 1 | 60 | 0 |
| Accounting | 402A | ACCTG CLK II | 16 | 13 | 1 | 60 | 0 |
| Accounting | 401A | ACCTG CLK III | 11 | 11 | 1 | 60 | 0 |
| Accounting | 167E | AST CONTRLR | 1 | 1 | 0 | 60 | 0 |
| Accounting | 300 | CHIEF ACCT | 1 | 1 | 1 | 60 | 0 |
| Accounting | 114A | CONF PAYMASTR | 1 | 1 | 1 | 60 | 0 |
| Accounting | 166E | CONTROLLER | 1 | 1 | 0 | 60 | 0 |
| Accounting | 519 | RECEIVER | 3 | 3 | 1 | 60 | 0 |
| Accounting | 546 | STOCK CLERK | 8 | 8 | 1 | 60 | 0 |
| Accounting | 550 | VND MCH ATN | 1 | 1 | 1 | 60 | 0 |
| Administrative | 285 | ADMIN CLRK | 1 | 0 | 1 | 60 | 0 |
| Administrative | 172E | DIR HUM RES | 0 | 1 | 0 | 60 | 0 |
| Administrative | 184 | EMPL REL MGR | 0 | 1 | 1 | 60 | 0 |
| Administrative | 210 | EMPLMNT SUPV | 0 | 1 | 1 | 60 | 0 |
| Administrative | 568 | EMPLMT CLRK | 0 | 1 | 1 | 60 | 0 |
| Administrative | 057 | EMPLOYEES RELATIONS MGR | 1 | 0 | 1 | 60 | 0 |
| Administrative | 306 | PURC AGENT | 2 | 2 | 1 | 60 | 0 |
| Administrative | 290 | RECEPTIONIST | 0 | 1 | 1 | 60 | 0 |
| Administrative | 282 | SECRETARY | 6 | 6 | 1 | 60 | 0 |
| Administrative | 183 | TRNG/DEVLP MG | 0 | 1 | 1 | 60 | 0 |
| Casino | 406 | ADM TERM OPTR | 3 | 3 | 1 | 60 | 0 |
| Casino | 281E | ASST SLOT MGR | 0 | 1 | 0 | 60 | 0 |
| Casino | 314 | AST CAG SHFT | 3 | 3 | 1 | 60 | 0 |
| Casino | 252E | AST CAG/CRED | 1 | 1 | 0 | 60 | 0 |
| Casino | 258 | ASST COIN MGR | 2 | 2 | 1 | 60 | 0 |
| Casino | 366 | AST SLT SHFT | 0 | 2 | 1 | 60 | 0 |
| Casino | 422 | BINGO AGENT | 10 | 13 | 1 | 20 | 2(20) |
| Casino | 190E | BINGO SHIFT SUPV/MGR | 1 | 2 | 0 | 20 | 2(20) |
| Casino | 330 | BNGO SHFT SUP | 2 | 2 | 1 | 20 | 2(20) |
| Casino | 423 | BOARD PERSON | 1 | 0 | 1 | 20 | 2(20) |
| Casino | 470 | BRUSH CASHIER | 2 | 0 | 1 | 30 | 2(15) |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.
[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|
| Casino | 427 | BRUSHPERSON | 1 | 2 | 1 | 30 | 2(15) |
| Casino | 313 | CAG SHFT SUPV | 3 | 3 | 1 | 60 | 0 |
| Casino | 431 | CAGE CASHIER | 52 | 61 | 1 | 60 | 0 |
| Casino | 157E | CAGE/CRED MGR | 1 | 1 | 0 | 60 | 0 |
| Casino | 189E | CARD RM MGR | 1 | 1 | 0 | 60 | 0 |
| Casino | 310E | CASINO FLOOR SUPERVISOR | 18 | 17 | 1 | 60 | 0 |
| Casino | 153E | CASINO MGR | 1 | 1 | 0 | 60 | 0 |
| Casino | 156E | CASN PIT BOSS | 5 | 5 | 0 | 60 | 0 |
| Casino | 155E | CASN SHFT MGR | 5 | 5 | 0 | 60 | 0 |
| Casino | 555 | CHANGE ATTD TRAINER | 0 | 1 | 1 | 30 | 0 |
| Casino | 438 | CHANGE ATTDT | 88 | 102 | 1 | 30 | 1(30) |
| Casino | 107 | COIN RM MAINT | 0 | 1 | 1 | 30 | 1(30) |
| Casino | 195E | COIN RM MGR | 1 | 1 | 1 | 60 | 0 |
| Casino | 346 | COIN RM SUPV | 4 | 0 | 1 | 60 | 0 |
| Casino | 433 | CRD RM CASHER | 0 | 8 | 1 | 30 | 2(15) |
| Casino | 326 | CRD SHFT MGR | 4 | 4 | 1 | 60 | 0 |
| Casino | 443 | CREDIT CLERK | 2 | 1 | 1 | 60 | 0 |
| Casino | 442 | CREDIT CLK II | 1 | 0 | 1 | 60 | 0 |
| Casino | 453 | DEALER 21 | 97 | 100 | 1 | [2] | 6(20) |
| Casino | 452 | DEALER DICE | 47 | 54 | 1 | [2] | 6(20) |
| Casino | 451 | DEALER-CRD RM | 28 | 32 | 1 | [2] | 6(20) |
| Casino | 465 | HRD COUNT ATN | 14 | 18 | 1 | 30 | 1(30) |
| Casino | 321 | KENO 2ND | 3 | 3 | 1 | 40 | 1(10) |
| Casino | 186E | KENO MGR | 1 | 1 | 0 | 40 | 1(10) |
| Casino | 320 | KENO SHFT MGR | 3 | 3 | 1 | 40 | 1(10) |
| Casino | 475 | KENO WRITER | 35 | 18 | 1 | 40 | 2(10) |
| Casino | 365 | MSTR BK CASHIER | 3 | 1 | 1 | 60 | 0 |
| Casino | 170 | MSTR SLOT TEC | 1 | 0 | 1 | 30 | 1(30) |
| Casino | 513 | PROP PLAYER | 10 | 9 | 1 | 30 | 2(15) |
| Casino | 516 | R/S CASHIER | 4 | 3 | 1 | 30 | 0 |
| Casino | 323 | R/S SHFT SUPV | 2 | 2 | 1 | 30 | 0 |
| Casino | 517 | R/S WRITER/TELLER | 10 | 16 | 1 | 30 | 0 |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.
[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|
| Casino | 158E | RACE/SPORTS MGR | 1 | 1 | 0 | 30 | 0 |
| Casino | 291 | RUNNER | 1 | 1 | 1 | [2] | [2] |
| Casino | 371E | SLOT CLB MGR | 0 | 1 | 0 | 60 | 0 |
| Casino | 375 | SLOT CLB SUPV | 0 | 4 | 1 | 60 | 0 |
| Casino | 574 | SLOT CLUB ATD | 0 | 10 | 1 | 60 | 0 |
| Casino | 317 | SLOT FLRPRSN | 35 | 30 | 1 | 30 | 1(30) |
| Casino | 316 | SLOT HOST | 3 | 3 | 1 | 60 | 0 |
| Casino | 169E | SLOT MGR | 1 | 1 | 0 | 60 | 0 |
| Casino | 283 | SLOT RPR MGR | 0 | 1 | 1 | 60 | 0 |
| Casino | 315 | SLOT SHFT MGR | 4 | 0 | 1 | 60 | 0 |
| Casino | 315 | SLOT SHFT MGR | 0 | 4 | 1 | 30 | 1(30) |
| Casino | 627 | SLOT SVC ATND | 0 | 3 | 1 | 30 | 1(30) |
| Casino | 538 | SLOT TECH I | 5 | 4 | 1 | 30 | 1(30) |
| Casino | 537 | SLOT TECH II | 5 | 6 | 1 | 30 | 1(30) |
| Casino | 442 | SLOT VLT ATTD | 0 | 2 | 1 | 30 | 1(30) |
| Engineering | 160E | FACILITY MGR | 1 | 1 | 0 | 30 | 2(15) |
| Engineering | 479 | LABORER | 1 | 2 | 1 | 30 | 2(15) |
| Engineering | 491 | MAIN ENG HEP | 3 | 5 | 1 | 30 | 2(15) |
| Engineering | 490 | MAINT ENGINR | 17 | 18 | 1 | 30 | 2(15) |
| Engineering | 498 | OU MNT ATN II | 5 | 4 | 1 | 30 | 2(15) |
| Engineering | 497 | OUT MNT FORMN | 1 | 1 | 1 | 30 | 2(15) |
| Engineering | 499 | OUTSIDE MAINT ATN I | 3 | 3 | 1 | 30 | 2(15) |
| Engineering | 501 | PAINTER | 1 | 1 | 1 | 30 | 2(15) |
| Executive | 151E | ASST GEN MGR | 1 | 1 | 0 | [2] | [2] |
| Executive | 152E | DIR NGHT OPN | 0 | 1 | 0 | [2] | [2] |
| Executive | 014E | EX VP/GEN MGR | 1 | 1 | 0 | [2] | [2] |
| Executive | 279E | EXEC SECRTY | 1 | 1 | 0 | 60 | 0 |
| Food & Bevera | 262E | AST CHEF | 1 | 1 | 0 | 40 | 1(20) |
| Food & Bevera | 558 | BANQ SERVER | 0 | 1 | 1 | [2] | [2] |
| Food & Bevera | 416 | BAR BACK | 16 | 13 | 1 | 60 | 0 |
| Food & Bevera | 415 | BARTENDER | 35 | 30 | 1 | 60 | 0 |
| Food & Bevera | 165E | BEV MGR | 1 | 1 | 0 | 60 | 0 |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|
| Food & Bevera | 355 | BEV SHFT SUPV | 3 | 3 | 1 | 60 | 0 |
| Food & Bevera | 428 | BUS PERSON | 36 | 25 | 1 | 40 | 1(20) |
| Food & Bevera | 437 | CASHIER-FD | 17 | 12 | 1 | 40 | 1(20) |
| Food & Bevera | 439 | COCKTAIL SERV | 73 | 82 | 1 | 60 | 0 |
| Food & Bevera | 447 | DANCE INSTRUC | 0 | 1 | 1 | 60 | 0 |
| Food & Bevera | 455 | DINING RM RUN | 0 | 8 | 1 | 40 | 1(20) |
| Food & Bevera | 454 | DISC JOCKEY | 1 | 1 | 1 | 60 | 0 |
| Food & Bevera | 457 | DOOR PERSON | 1 | 1 | 1 | [2] | [2] |
| Food & Bevera | 164E | EXECUTIVE CHEF | 1 | 1 | 0 | 40 | 1(20) |
| Food & Bevera | 460 | FD OPER ANLYS | 1 | 1 | 1 | 40 | 1(20) |
| Food & Bevera | 352 | FOD SHFT SUP | 4 | 6 | 1 | 40 | 1(20) |
| Food & Bevera | 163E | FOOD DIR | 1 | 1 | 0 | 40 | 1(20) |
| Food & Bevera | 163E | FOOD DIR | 1 | 0 | 0 | 60 | 0 |
| Food & Bevera | 461 | FOOD SERVER | 72 | 78 | 1 | 40 | 1(20) |
| Food & Bevera | 353 | HOST PERSON | 11 | 12 | 1 | 40 | 1(20) |
| Food & Bevera | 478 | KITCHN HELP | 75 | 81 | 1 | 40 | 1(20) |
| Food & Bevera | 477 | LD KIT HELP | 3 | 3 | 1 | 40 | 1(20) |
| Food & Bevera | 480 | LD LINE COOK | 3 | 3 | 1 | 40 | 1(20) |
| Food & Bevera | 488 | LINE COOK | 22 | 21 | 1 | 40 | 1(20) |
| Food & Bevera | 510 | PREP COOK I | 31 | 27 | 1 | 40 | 1(20) |
| Food & Bevera | 509 | PREP COOK II | 7 | 10 | 1 | 40 | 1(20) |
| Food & Bevera | 508 | PREP COOK III | 4 | 4 | 1 | 40 | 1(20) |
| Food & Bevera | 269E | REST OPER MGR | 1 | 1 | 0 | 40 | 1(20) |
| Food & Bevera | 351 | RESTURNT MGR | 3 | 6 | 1 | 40 | 1(20) |
| Food & Bevera | 539 | SNAC BAR ATDN | 13 | 11 | 1 | 40 | 1(20) |
| Food & Bevera | 540 | SNACK VENDOR | 1 | 0 | 1 | [2] | [2] |
| Food & Bevera | 354 | SOUS CHEF | 8 | 7 | 1 | 40 | 1(20) |
| Food & Bevera | 362 | SPC RM CHEF | 1 | 1 | 1 | 40 | 1(20) |
| Food & Bevera | 541 | SPEC BUS PERS | 6 | 12 | 1 | 40 | 1(20) |
| Food & Bevera | 542 | SPEC FD SERVR | 18 | 18 | 1 | 40 | 1(20) |
| Food & Bevera | 543 | SPEC LD LN CK | 1 | 3 | 1 | 40 | 1(20) |
| Food & Bevera | 544 | SPEC LINE CK | 0 | 7 | 1 | 40 | 1(20) |
| Food & Bevera | 547 | STOREM ATDN | 11 | 1 | 1 | 60 | 0 |
| Food & Bevera | 425 | SUPPLY RNR | 0 | 3 | 1 | 60 | 0 |
| Food & Bevera | 202 | WESTERN DANCE MGR | 1 | 1 | 1 | 60 | 0 |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

|  |  |  |  |  | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
| JOB CLASS | JOB CODE | DESCRIPTION | 1988 | 1989 |  |  |  |
|---|---|---|---|---|---|---|---|
| Hotel | 408 | ALTERN ATNDNT | 2 | 2 | 1 | [2] | [2] |
| Hotel | 257 | AST EXEC HSKP | 1 | 1 | 1 | 30 | 2(10) |
| Hotel | 419 | BELL PERSON | 3 | 4 | 1 | 60 | 0 |
| Hotel | 260 | BOWL AST MGR | 0 | 1 | 1 | 60 | 0 |
| Hotel | 199E | BOWL CNTR DIR/MGR | 1 | 1 | 0 | 60 | 0 |
| Hotel | 426 | BOWL DESK CLK | 5 | 8 | 1 | 60 | 0 |
| Hotel | 432 | BOWLING CNT MKT | 0 | 1 | 1 | 60 | 0 |
| Hotel | 260 | BOWLING MGR | 1 | 0 | 1 | 60 | 0 |
| Hotel | 348A | BOWLING OFFICE MGR | 1 | 1 | 1 | 60 | 0 |
| Hotel | 350 | CHIEF MECHNC | 1 | 1 | 1 | 60 | 0 |
| Hotel | 446 | CUSTODIAN I | 87 | 84 | 1 | 30 | 2(10) |
| Hotel | 445 | CUSTODIAN II | 4 | 8 | 1 | 30 | 2(10) |
| Hotel | 256E | EXECUT HSKPR | 1 | 1 | 0 | 30 | 2(10) |
| Hotel | 369 | FASHION COORD | 1 | 1 | 1 | [2] | [2] |
| Hotel | 464 | GUEST RM ATND | 17 | 17 | 1 | 30 | 2(10) |
| Hotel | 472 | HOTEL CLK I | 2 | 3 | 1 | 60 | 0 |
| Hotel | 471 | HOTEL CLK II | 6 | 10 | 1 | 60 | 0 |
| Hotel | 191E | HOTEL MGR | 1 | 1 | 0 | 60 | 0 |
| Hotel | 336 | LD CUSTODIAN | 3 | 3 | 1 | 30 | 2(10) |
| Hotel | 486 | LEAGUE COORDN | 1 | 2 | 1 | [2] | [2] |
| Hotel | 489 | LINEN RM ATDN | 2 | 2 | 1 | 30 | 2(10) |
| Hotel | 334 | LINEN RM SUPV | 1 | 1 | 1 | 30 | 2(10) |
| Hotel | 493 | MECHANIC "A" | 1 | 1 | 1 | 60 | 0 |
| Hotel | 494 | MECHANIC "B" | 9 | 8 | 1 | 60 | 0 |
| Hotel | 500 | MERCH CNTRL | 0 | 1 | 1 | 60 | 0 |
| Hotel | 502 | PARKG ATDNT | 10 | 10 | 1 | 60 | 0 |
| Hotel | 194E | PBX MANAGER | 1 | 1 | 0 | 60 | 0 |
| Hotel | 503 | PBX OPERATOR | 6 | 7 | 1 | 60 | 0 |
| Hotel | 505 | PLAYRM ATDNT | 2 | 6 | 1 | 60 | 0 |
| Hotel | 507 | POSTAL CLRK | 0 | 1 | 1 | [2] | [2] |
| Hotel | 349 | PRO SHOP MGR | 1 | 1 | 1 | 60 | 0 |
| Hotel | 514 | PRO SHP ATDNT | 1 | 1 | 1 | 60 | 0 |
| Hotel | 255 | RM RESERV MGR | 1 | 1 | 1 | 60 | 0 |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|
| Hotel | 525 | RV PARK ATTN | 1 | 3 | 1 | 60 | 0 |
| Hotel | 523 | RV PARK CLRK | 7 | 8 | 1 | 60 | 0 |
| Hotel | 524 | RV PARK LD ATTN | 1 | 1 | 1 | 60 | 0 |
| Hotel | 193 | RV PARK MGR | 2 | 2 | 1 | 60 | 0 |
| Hotel | 527 | SALES CLERK | 8 | 6 | 1 | 60 | 0 |
| Hotel | 526 | SALES CLERK/CASHIER | 11 | 11 | 1 | 60 | 0 |
| Hotel | 522 | SALES/COMISNS | 18 | 20 | 1 | 60 | 0 |
| Hotel | 528 | SCORE ASSIST | 3 | 2 | 1 | 60 | 0 |
| Hotel | 536 | SHUTL BUS DRV | 1 | 1 | 1 | [2] | [2] |
| Hotel | 344 | STOR DEPT MGR | 1 | 1 | 1 | 60 | 0 |
| Hotel | 302 | STORE FLR MGR | 1 | 2 | 1 | 60 | 0 |
| Hotel | 567 | STORE LD CSHR | 0 | 4 | 1 | 60 | 0 |
| Hotel | 161E | STORE MGR | 1 | 1 | 0 | 60 | 0 |
| Hotel | 322 | TRANS SUPV | 1 | 1 | 1 | 60 | 0 |
| Hotel | 573 | TRUCKLD CASN | 15 | 14 | 1 | 60 | 0 |
| MIS | 440A | COMPUTER OPRTR | 5 | 5 | 1 | 60 | 0 |
| MIS | 304 | D P SUPERV | 1 | 2 | 1 | 60 | 0 |
| MIS | 456A | DATA ENTR CLK | 0 | 4 | 1 | 60 | 0 |
| MIS | 534 | SR COMPUTER OP | 2 | 2 | 1 | 60 | 0 |
| Sales & Market | 209E | ADV/PUB MGR | 0 | 1 | 0 | 60 | 0 |
| Sales & Market | 174E | DIR MRKTNG | 0 | 1 | 0 | 60 | 0 |
| Sales & Market | 180A | MKT OPR ANYST | 0 | 1 | 1 | 60 | 0 |
| Sales & Market | 338A | PU/PRO/AD AST | 1 | 1 | 1 | 60 | 0 |
| Security | 261E | ASST SECURITY MGR | 1 | 1 | 0 | 30 | 2(15) |
| Security | 552 | SECRTY OFF/OT | 9 | 8 | 1 | 30 | 2(15) |
| Security | 532 | SECURITY DISP | 2 | 1 | 1 | 30 | 2(15) |
| Security | 159E | SECURITY MANAGER | 1 | 1 | 0 | 30 | 2(15) |
| Security | 533 | SECURITY OFF/IN | 21 | 23 | 1 | 30 | 2(15) |
| Security | 331 | SECURITY SHFT | 2 | 3 | 1 | 30 | 2(15) |
| Security | 548 | SURVEIL AGENT | 2 | 2 | 1 | 30 | 2(15) |
| Total | | | 1,402 | 1,508 | | | |

[1] The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.
[2] Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Accounting | 400A | ACCT CLK IV | No | 6 | 0 | 1 | 60 | 2(15) |
| Accounting | 401A | ACCTG CLK II | No | 31 | 30 | 1 | 60 | 2(15) |
| Accounting | 403 | ACCTG CLRK I | No | 11 | 15 | 1 | 60 | 2(15) |
| Accounting | 402A | ACCTG CLRK II | No | 14 | 15 | 1 | 60 | 2(15) |
| Accounting | 303E | ACT CLK SUPV | No | 5 | 8 | 0 | 60 | 2(15) |
| Accounting | 167E | AST CONTRLR | No | 3 | 3 | 0 | 60 | 0 |
| Accounting | 166E | CONTROLLER | No | 1 | 1 | 0 | 60 | 0 |
| Accounting | 442 | CREDIT CLRK II | No | 2 | 0 | 1 | 60 | 2(15) |
| Accounting | 205E | F & B CONTROLLER | No | 1 | 1 | 0 | 60 | 2(15) |
| Accounting | 104E | INTRN CNTL SPC | No | 0 | 1 | 0 | 60 | 0 |
| Accounting | 301E | INVNTRY CNTRL | No | 1 | 1 | 0 | 60 | 0 |
| Accounting | 519 | RECEIVER | No | 6 | 6 | 1 | 30 | 2(10) |
| Accounting | 300E | SR ACCOUNTANT | No | 1 | 1 | 0 | 60 | 2(15) |
| Accounting | 546 | STOCK CLRK | No | 6 | 0 | 1 | 60 | 0 |
| Accounting | 546 | STOCK CLRK | No | 0 | 4 | 1 | 30 | 2(15) |
| Accounting | 550 | VND MCH ATN | No | 1 | 3 | 1 | 30 | 2(10) |
| Administrative | 278E | ADMIN ASST | No | 1 | 0 | 0 | 60 | 0 |
| Administrative | 285 | ADMIN CLRK | No | 1 | 0 | 1 | 60 | 0 |
| Administrative | 172E | DIR HUM RES | No | 0 | 1 | 0 | 60 | 0 |
| Administrative | 173E | DIR ADMIN | No | 1 | 1 | 0 | 60 | 0 |
| Administrative | 176 | EMP REL/DEV | No | 0 | 1 | 1 | 60 | 0 |
| Administrative | 057 | EMP REL/DEVP MGR | No | 1 | 0 | 1 | 60 | 0 |
| Administrative | 210 | EMPLOYMENT SUPV | No | 0 | 1 | 1 | 60 | 0 |
| Administrative | 107 | HR STAFF AST | No | 1 | 0 | 1 | 60 | 0 |
| Administrative | 306 | PURC AGENT | No | 3 | 3 | 1 | 60 | 0 |
| Administrative | 290 | RECEPTIONIST | No | 1 | 0 | 1 | 60 | 0 |
| Administrative | 291 | RUNNER | No | 2 | 2 | 1 | 60 | 2(15) |
| Administrative | 358E | SAFETY/LOSS MANAGER | No | 0 | 1 | 0 | 60 | 0 |
| Administrative | 282 | SECRETARY | No | 7 | 9 | 1 | 60 | 0 |
| Administrative | 305 | SR PURCH AGENT | No | 1 | 1 | 1 | 60 | 0 |
| Casino | 406 | ADM TERM OPTR | No | 7 | 6 | 1 | 45 | 0 |
| Casino | 417 | ADMN TRM COOR | No | 0 | 1 | 1 | 45 | 0 |
| Casino | 154E | ASSISTANT CASINO MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 314 | AST CAG SHFT | Yes | 3 | 2 | 1 | 60,45,30 | 0,15,(2)15 |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.
[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Casino | 252E | AST CAGE/CREDIT | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 258E | AST COIN MGR | No | 0 | 1 | 0 | End of drop count | [2] |
| Casino | 281E | AST SLOT MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 423 | BOARD PERSON | No | 9 | 8 | 1 | 45 | 0 |
| Casino | 420 | BOOTH CASHR | Yes | 11 | 13 | 2 | 40 | 2(10) |
| Casino | 311E | BOXPERSON | No | 20 | 20 | 0 | [2] | 7(20) |
| Casino | 404 | BRD PERSON CORD | No | 2 | 1 | 1 | 45 | 0 |
| Casino | 427 | BRUSHPERSON | Yes | 5 | 7 | 1 | 60 | 0 |
| Casino | 313E | CAG SHFT SUPV | Yes | 3 | 3 | 0 | 60,45,30 | 0,15,(2)15 |
| Casino | 431 | CAGE CASHIER | Yes | 43 | 45 | 1 | 60,45,30 | 0,15,(2)15 |
| Casino | 157E | CAGE/CRED MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 189E | CARD RM MGR | No | 1 | 0 | 0 | 60 | 0 |
| Casino | 433 | CARD ROOM CASHIER | No | 4 | 4 | 1 | 60 | 0 |
| Casino | 421 | CAROUSEL ATN | Yes | 15 | 20 | 2 | 40 | 2(10) |
| Casino | 310E | CASINO FLOOR SUPERVISOR | No | 47 | 50 | 0 | 40 | 2(10) |
| Casino | 309E | CASINO HOST | No | 2 | 4 | 0 | 60 | 0 |
| Casino | 153E | CASINO MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 312E | CASN CUST REP | No | 5 | 4 | 0 | 60 | 0 |
| Casino | 156E | CASN PIT BOSS | No | 6 | 6 | 0 | 60 | 0 |
| Casino | 155E | CASN SHFT MGR | No | 4 | 4 | 0 | 60 | 0 |
| Casino | 438 | CHANGE ATTDT | Yes | 78 | 67 | 2 | 40 | 2(10) |
| Casino | 267E | CLCTN MGR | No | 0 | 1 | 0 | 60 | 0 |
| Casino | 195E | COIN RM MGR | No | 1 | 1 | 0 | End of drop count | [2] |
| Casino | 326E | CRD SHFT MGR | No | 3 | 3 | 0 | 60 | 0 |
| Casino | 441 | CREDIT CLK III | No | 1 | 1 | 1 | 60,45,30 | 0,15,2(15) |
| Casino | 453 | DEALER 21 | Yes | 223 | 222 | 1 | [2] | 7(20) |
| Casino | 452 | DEALER DICE | Yes | 54 | 51 | 1 | [2] | 7(20) |
| Casino | 451 | DEALER-CRD RM | Yes | 67 | 71 | 1 | [2] | 7(20) |
| Casino | 370E | DIR SLT MRKTG | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 318 | HOSP CENTER SUP | No | 1 | 0 | 1 | 60 | 0 |
| Casino | 465 | HRD COUNT ATN | No | 9 | 12 | 1 | Taken after drop | [2] |
| Casino | 321E | KENO 2ND | No | 2 | 3 | 0 | 60 | 0 |
| Casino | 474 | KENO 3RD | Yes | 2 | 0 | 1 | 60 | 0 |
| Casino | 186E | KENO MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 476 | KENO RUNNER | Yes | 17 | 13 | 1 | 40 | 2(10) |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Casino | 320E | KENO SHFT MGR | No | 3 | 3 | 0 | 60 | 0 |
| Casino | 475 | KENO WRITER | Yes | 26 | 22 | 1 | 40 | 2(10) |
| Casino | 365 | MASTER BANK | Yes | 0 | 6 | 1 | 60,45,30 | 0,15,2(15) |
| Casino | 504 | PIT CLERK | No | 3 | 8 | 1 | 45 | 2(15) |
| Casino | 380E | PIT CLK SUPV | No | 0 | 1 | 0 | 60 | 0 |
| Casino | 513 | PROP PLAYER | No | 2 | 1 | 1 | 60 | 0 |
| Casino | 516 | R/S CASHIER | Yes | 9 | 10 | 1 | 45 | 0 |
| Casino | 325 | R/S COMP SUPV | No | 1 | 1 | 1 | 45 | 0 |
| Casino | 323E | R/S SHFT SUPV | No | 6 | 9 | 0 | 45 | 0 |
| Casino | 517 | R/S TELLER | Yes | 32 | 36 | 1 | 45 | 0 |
| Casino | 518 | R/S VERITYPE | Yes | 2 | 2 | 1 | 45 | 0 |
| Casino | 188E | RACE BK MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 158E | RACE/SPORTS MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 371E | SLOT CLB MGR | No | 5 | 1 | 0 | 60 | 0 |
| Casino | 375E | SLOT CLB SUPV | No | 0 | 5 | 0 | 60 | 0 |
| Casino | 574 | SLOT CLUB ATD | No | 0 | 8 | 1 | 60 | 0 |
| Casino | 317 | SLOT FLRPRSN | Yes | 26 | 31 | 1 | 30 | 2(10) |
| Casino | 316E | SLOT HOST | No | 3 | 7 | 0 | 60 | 0 |
| Casino | 169E | SLOT MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 315E | SLOT SHFT MGR | No | 4 | 4 | 0 | 30 | 0 |
| Casino | 319 | SLOT SHOP SUPV | No | 1 | 1 | 1 | 30 | 0 |
| Casino | 538 | SLOT TECH I | Yes | 1 | 2 | 1 | 30 | 2(15) |
| Casino | 537 | SLOT TECH II | Yes | 6 | 7 | 1 | 30 | 2(15) |
| Casino | 187E | SPORTS BK MGR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 374E | SPORTS INFO COORD | No | 0 | 1 | 0 | 45 | 0 |
| Casino | 329E | TOURNMT DIR | No | 1 | 1 | 0 | 60 | 0 |
| Casino | 016E | VP/CSNO OPRTN | No | 1 | 1 | 0 | 60 | 0 |
| Engineering | 259E | AST FACILITY MGR | No | 1 | 1 | 0 | 60 | 0 |
| Engineering | 436 | CARPENTER | Yes | 11 | 14 | 1 | 30 | 2(15) |
| Engineering | 459 | ELECTRICIAN | Yes | 14 | 13 | 1 | 30 | 2(15) |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Engineering | 160E | FACILITY MGR | No | 1 | 1 | 0 | 60 | 0 |
| Engineering | 479 | LABORER | Yes | 7 | 8 | 1 | 30 | 2(15) |
| Engineering | 491 | MAIN ENG HELP | Yes | 2 | 2 | 1 | 30 | 2(15) |
| Engineering | 490 | MAINT ENGINR | Yes | 16 | 22 | 1 | 30 | 2(15) |
| Engineering | 498 | OU MNT ATN II | Yes | 0 | 5 | 1 | 30 | 2(15) |
| Engineering | 497 | OUT MNT FORMN | Yes | 5 | 1 | 1 | 30 | 2(15) |
| Engineering | 501 | PAINTER | Yes | 2 | 4 | 1 | 30 | 2(15) |
| Engineering | 575 | TRANS DRIVER | Yes | 0 | 3 | 1 | 30 | 2(15) |
| Engineering | 604 | UPHOLSTERER | Yes | 2 | 1 | 1 | 30 | 2(15) |
| Executive | 151E | ASST GEN MGR | No | 1 | 1 | 0 | 60 | 0 |
| Executive | 014E | EX VP/GEN MGR | No | 1 | 1 | 0 | 60 | 0 |
| Executive | 279E | EXEC SECRTY | No | 3 | 9 | 0 | 60 | 0 |
| Food & Bevera | 262E | AST CHEF | Yes | 1 | 0 | 0 | 60 | 0 |
| Food & Bevera | 413 | BAKER | Yes | 11 | 11 | 2 | 40 | 2(10) |
| Food & Bevera | 414 | BAKER HELPER | Yes | 6 | 5 | 2 | 40 | 2(10) |
| Food & Bevera | 416 | BAR BACK | Yes | 16 | 21 | 2 | 40 | 2(10) |
| Food & Bevera | 415 | BARTENDER | Yes | 32 | 32 | 1 | 40 | 2(10) |
| Food & Bevera | 165E | BEV MGR | No | 1 | 0 | 0 | 60 | 0 |
| Food & Bevera | 355E | BEV SHFT SUPV | No | 4 | 0 | 0 | 60 | 0 |
| Food & Bevera | 429 | BUS - BUFFET | Yes | 4 | 4 | 2 | 40 | 2(10) |
| Food & Bevera | 428 | BUS PERSON | Yes | 37 | 23 | 2 | 40 | 2(10) |
| Food & Bevera | 521 | BUTCHER | Yes | 0 | 3 | 2 | 40 | 2(10) |
| Food & Bevera | 356 | CAPTAIN | No | 8 | 9 | 2 | 60 | 0 |
| Food & Bevera | 437 | CASHIER-FD | Yes | 25 | 27 | 2 | 40 | 2(10) |
| Food & Bevera | 439 | COCKTAIL SERV | Yes | 97 | 76 | 2 | 40 | 2(10) |
| Food & Bevera | 455 | DINING RM RUN | Yes | 24 | 25 | 2 | 40 | 2(10) |
| Food & Bevera | 272E | EX KIT STEWRD | Yes | 1 | 1 | 0 | 60 | 0 |
| Food & Bevera | 164E | EXECUTVE CHEF | Yes | 2 | 1 | 0 | 60 | 0 |
| Food & Bevera | 162E | FD/BEV DIR | No | 1 | 1 | 0 | 60 | 0 |
| Food & Bevera | 352E | FOD SHFT SUP | No | 5 | 8 | 0 | 40 | 0 |
| Food & Bevera | 461 | FOOD SERVER | Yes | 126 | 120 | 2 | 40 | 2(10) |
| Food & Bevera | 308E | HEAD CASHIER | No | 1 | 1 | 0 | 60 | 0 |
| Food & Bevera | 353 | HOST PERSON | Yes | 30 | 31 | 2 | 40 | 2(10) |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.
[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Food & Bevera | 478 | KITCHN HELP | Yes | 81 | 87 | 2 | 40 | 2(10) |
| Food & Bevera | 477 | LD KIT HELP | Yes | 4 | 4 | 2 | 40 | 2(10) |
| Food & Bevera | 488 | LINE COOK | Yes | 52 | 49 | 2 | 40 | 2(10) |
| Food & Bevera | 203 | MAITRE D HOTEL | No | 1 | 1 | 1 | 60 | 0 |
| Food & Bevera | 263E | PASTRY CHEF | Yes | 1 | 0 | 0 | 60 | 0 |
| Food & Bevera | 510 | PREP COOK I | Yes | 26 | 17 | 2 | 40 | 2(10) |
| Food & Bevera | 509 | PREP COOK II | Yes | 19 | 17 | 2 | 40 | 2(10) |
| Food & Bevera | 508 | PREP COOK III | Yes | 3 | 1 | 2 | 40 | 2(10) |
| Food & Bevera | 269E | REST MGR | No | 2 | 1 | 0 | 40 | 0 |
| Food & Bevera | 351E | RESTURNT MGR | No | 2 | 5 | 0 | 40 | 0 |
| Food & Bevera | 623 | RM SRVC BUS | Yes | 0 | 4 | 2 | 40 | 2(10) |
| Food & Bevera | 622 | RM SRVC SRVR | Yes | 0 | 8 | 2 | 40 | 2(10) |
| Food & Bevera | 625 | SHWRM SRVR | Yes | 0 | 22 | 2 | 60 | 0 |
| Food & Bevera | 539 | SNAC BAR ATDN | Yes | 4 | 6 | 2 | 40 | 2(10) |
| Food & Bevera | 354 | SOUS CHEF | Yes | 4 | 5 | 2 | 40 | 0 |
| Food & Bevera | 362E | SPC RM CHEF | Yes | 3 | 3 | 0 | 40 | 2(10) |
| Food & Bevera | 361E | SPC RM HD PER | Yes | 2 | 2 | 0 | 40 | 0 |
| Food & Bevera | 541 | SPEC BUS PERS | Yes | 15 | 13 | 2 | 40 | 2(10) |
| Food & Bevera | 542 | SPEC FD SERVR | Yes | 22 | 26 | 2 | 40 | 2(10) |
| Food & Bevera | 544 | SPEC LINE CK | Yes | 15 | 16 | 2 | 40 | 2(10) |
| Food & Bevera | 564 | SPLY RUN WHSE | Yes | 4 | 4 | 2 | 40 | 2(10) |
| Food & Bevera | 425 | SPLY RUNNER | No | 31 | 27 | 2 | 40 | 2(10) |
| Food & Bevera | 547 | STORERM ATDN | No | 5 | 4 | 1 | 40 | 2(10) |
| Hotel | 307E | WRHSE SUPRV | No | 1 | 1 | 0 | 60 | 0 |
| Hotel | 408 | ALTERNATTN | Yes | 1 | 1 | 2 | Break between shows | [2] |
| Hotel | 343 | ANIMAL TRN | No | 1 | 1 | 1 | Break between shows | [2] |
| Hotel | 280 | AST CUST SRVC | No | 3 | 4 | 1 | 60 | 0 |
| Hotel | 257E | AST EXEC HSKP | No | 2 | 2 | 0 | 60 | 0 |
| Hotel | 410 | AST HD WARDRB | No | 1 | 1 | 1 | Break between shows | [2] |
| Hotel | 192E | AST HOTEL MGR | No | 2 | 3 | 0 | 60 | 0 |
| Hotel | 412 | AST WARDROBE | No | 0 | 1 | 1 | Break between shows | [2] |
| Hotel | 418 | BELL CAPTAIN | Yes | 3 | 3 | 2 | 40 | 2(10) |
| Hotel | 419 | BELL PERSON | Yes | 20 | 22 | 2 | 40 | 2(10) |
| Hotel | 430 | BUTTON BOOTH | No | 1 | 1 | 1 | Break between shows | [2] |
| Hotel | 340E | COMPANY MGR | No | 1 | 1 | 0 | 60 | 0 |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.

[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Hotel | 444 | CUE CALLER | No | 1 | 1 | 1 | 60 | 0 |
| Hotel | 446 | CUSTODAN I | Yes | 85 | 98 | 2 | 40 | 2(10) |
| Hotel | 445 | CUSTODIAN II | Yes | 42 | 55 | 2 | 40 | 2(10) |
| Hotel | 449 | DANCER CONVERED | Yes | 34 | 41 | 1 | Break between shows | [2] |
| Hotel | 448 | DANCER NUDE | Yes | 11 | 12 | 1 | Break between shows | [2] |
| Hotel | 198E | DIR HTL OPRTN | No | 1 | 0 | 0 | 60 | 0 |
| Hotel | 197E | DIR LIDO | No | 1 | 0 | 0 | 60 | 0 |
| Hotel | 256E | EXECUT HSKPR | No | 1 | 1 | 0 | 60 | 0 |
| Hotel | 464 | GUEST RM ATND | Yes | 90 | 115 | 2 | 40 | 2(10) |
| Hotel | 332 | GUEST ROOM SUPERVISOR | Yes | 12 | 15 | 1 | 60 | 0 |
| Hotel | 617 | HD AUDIO/VISL | No | 1 | 1 | 1 | Break between shows | [2] |
| Hotel | 530 | HD ELEC & SOUND | No | 1 | 1 | 1 | Break between shows | [2] |
| Hotel | 468 | HD PROJECTN | No | 1 | 1 | 1 | Break between shows | [2] |
| Hotel | 467 | HEAD FLYMAN | No | 1 | 1 | 1 | Break between shows | [2] |
| Hotel | 469 | HEAD PROP | No | 1 | 1 | 1 | Break betweem shows | [2] |
| Hotel | 472 | HOTEL CLK I | No | 16 | 18 | 1 | 45 | 1(30) |
| Hotel | 471 | HOTEL CLK II | Yes | 24 | 23 | 1 | 45 | 1(30) |
| Hotel | 191E | HOTEL MGR | No | 1 | 1 | 0 | 60 | 0 |
| Hotel | 337 | LD PBX OPERTR | No | 4 | 16 | 1 | 45 | 1(30) |
| Hotel | 554E | LIDO PRODUCER | No | 1 | 1 | 0 | 60 | 0 |
| Hotel | 487 | LINE CAPTAIN | Yes | 1 | 0 | 1 | Break between shows | [2] |
| Hotel | 489 | LINEN RM ATDN | Yes | 8 | 8 | 2 | 40 | 2(10) |
| Hotel | 334 | LINEN RM SUPV | Yes | 0 | 1 | 2 | 60 | 0 |
| Hotel | 379 | MUSICAL PERFORMER | No | 0 | 1 | 1 | Break between shows | [2] |
| Hotel | 378 | MUSICIAN | No | 0 | 17 | 1 | Break between shows | [2] |
| Hotel | 377 | ORCHESTRA LDR | No | 0 | 1 | 1 | Break between shows | [2] |
| Hotel | 502 | PARKG ATDNT | Yes | 8 | 8 | 1 | As time permits | [2] |
| Hotel | 194E | PBX MANAGER | No | 1 | 1 | 0 | 60 | 0 |
| Hotel | 503 | PBX OPERATOR | | 14 | 0 | 1 | 45 | 1(30) |
| Hotel | 335 | POOL SUP | No | 1 | 1 | 1 | 60 | 0 |
| Hotel | 511 | PRIN DANCER | Yes | 6 | 11 | 1 | Break between shows | [2] |
| Hotel | 520 | PROJECTIONIST | No | 5 | 5 | 1 | Break between shows | [2] |
| Hotel | 255E | RM RESERV MGR | No | 1 | 1 | 0 | 60 | 0 |
| Hotel | 525 | RV PARK ATN | Yes | 1 | 1 | 1 | 30 | 2(10) |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.
[2]Not available.

| JOB CLASS | JOB CODE | DESCRIPTION | UNIFORM | 1988 | 1989 | MEAL CODE[1] | MEAL BREAK MINUTES | OTHER BREAKS (MINUTES) |
|---|---|---|---|---|---|---|---|---|
| Hotel | 523 | RV PARK CLRK | Yes | 2 | 2 | 1 | 30 | 2(10) |
| Hotel | 524 | RV PARK LD ATN | Yes | 1 | 1 | 1 | 30 | 2(10) |
| Hotel | 193 | RV PARK MGR | No | 1 | 1 | 1 | 60 | 0 |
| Hotel | 343E | SALES SUPV | No | 0 | 1 | 0 | 60 | 0 |
| Hotel | 535 | SHOWROOM RESV | Yes | 0 | 4 | 1 | 30 | 2(10) |
| Hotel | 435 | SHOWROOM RESV | Yes | 4 | 0 | 1 | 30 | 2(10) |
| Hotel | 341E | STAGE MGR | No | 0 | 1 | 0 | 60 | 0 |
| Hotel | 545 | STAGEHAND | No | 12 | 12 | 1 | Break between shows | [2] |
| Hotel | 529 | STATUS BD OPR | No | 2 | 7 | 2 | 40 | 2(10) |
| Hotel | 551 | WARDROBE ATDN | No | 16 | 14 | 1 | Break between shows | [2] |
| MIS | 440A | COMPUTR OPRTR | No | 5 | 5 | 1 | 60 | 2(15) |
| MIS | 304E | D P SUPERV | No | 1 | 2 | 0 | 60 | 0 |
| MIS | 456 | DATA ENTRY CLK | No | 5 | 0 | 1 | 60 | 1(15) |
| Sales & Market | 280E | ADVERTISING MGR | No | 1 | 1 | 0 | 60 | 0 |
| Sales & Market | 174E | DIR MRKTNG | No | 1 | 2 | 0 | 60 | 0 |
| Sales & Market | 357E | DIRECT MARKTG MANAGER | No | 0 | 1 | 0 | 60 | 0 |
| Sales & Market | 492 | DRCT MAIL CLK | Yes | 0 | 1 | 1 | 60 | 1(15) |
| Sales & Market | 339E | GRP SALES MGR | No | 1 | 0 | 0 | 60 | 0 |
| Sales & Market | 109 | MKT OP ANALYST | No | 1 | 0 | 1 | 60 | 0 |
| Sales & Market | 180A | MRK OPR ANALST | No | 0 | 1 | 1 | 60 | 0 |
| Sales & Market | 206E | PROMO/SPECIAL EVENTS MGR | No | 1 | 1 | 0 | 30 | 2(10) |
| Sales & Market | 512A | PROMOTION ATN | No | 21 | 14 | 1 | 30 | 2(10) |
| Sales & Market | 207E | PUBLICITY DIR | No | 1 | 1 | 0 | 60 | 0 |
| Sales & Market | 090E | SALES ACCT EX | No | 1 | 0 | 0 | 60 | 0 |
| Sales & Market | 178E | SALES ACCT EXEC | No | 0 | 1 | 0 | 60 | 0 |
| Security | 261E | AST CHIEF SECURITY | No | 0 | 1 | 0 | 60 | 0 |
| Security | 407 | LD SEC OFCR | No | 0 | 3 | 1 | 30 | 2(15) |
| Security | 532 | SECURITY DISP | No | 2 | 3 | 1 | 60 | 0 |
| Security | 159E | SECURITY MANAGER | No | 1 | 1 | 0 | 60 | 0 |
| Security | 533 | SECURITY OFF/IN | Yes | 62 | 79 | 1 | 60 | 0 |
| Security | 331E | SECURITY SHFT | No | 4 | 3 | 0 | 60 | 0 |
| Security | 548E | SURVEIL AGENT | No | 4 | 5 | 0 | 60 | 0 |
| Total | | | | 2,251 | 2,406 | | | |

[1]The meal code is as follows: 0 = authorization to eat in the public restaurants on the premises; 1 = entitled to eat one meal per shift in the Cafeterias; 2 = entitled to eat two meals per shift in the Cafeterias.
[2]Not available.

The right of many of petitioners' employees to receive meals from petitioners without charge is set forth in numerous labor agreements; in the case of outside maintenance attendants, foremen, and laborers at Stardust, these agreements also provide that petitioners must pay them the cost of a meal in lieu of a meal.[2]  In some cases, these agreements allow an employee to receive two meals in a workday; most of these employees take advantage of both meals.  In the case of dealers, who generally are entitled to a 20-minute break every hour, petitioners' practice is to allow the dealers to eat during all of their breaks, and the dealers tend to take advantage of this practice.

The labor agreements, and the titles of the covered employees (exclusive of the employees in the category "Food and Beverage"), are as follows:

> COLLECTIVE BARGAINING AGREEMENT between STRIP HOTELS
> AND CASINOS and LOCAL JOINT EXECUTIVE BOARD OF LAS
> VEGAS, CULINARY WORKERS UNION, LOCAL NO. 226, and
> BARTENDERS UNION, LOCAL NO. 165 (culinary workers'
> agreement):
>
> > Stardust:  Carousel Attendant, Change
> > Attendant, Bell Captain, Bell Person,
> > Custodian I, Custodian II, Guest Room
> > Attendant, Guest Room Supervisor, Linen Room
> > Attendant, Linen Room Supervisor, Status
> > Board Operator.
> >
> > Fremont:  Carousel Attendant, Change
> > Attendant, Change Person Trainer, Bell
> > Captain, Bell Person, Custodian I, Custodian
> > II, Guest Room Attendant, Lead Custodian,
> > Linen Room Attendant, Status Board Operator.

---

[2] We are unable to find that these three classifications of employees do not also receive meals during their shifts.  The record leads us to believe that they do.

LABOR AGREEMENT[S] between RESORT HOTELS and PROFESSIONAL, CLERICAL AND MISCELLANEOUS EMPLOYEES, TEAMSTERS LOCAL UNION NO. 995 (Teamsters' agreements):

Stardust:  Receiver, Laborer, Outside Maintenance Attendant II, Outside Maintenance Foreman, Parking Attendant, PBX Operator, Storeroom Attendant, Hotel Clerk I, Hotel Clerk II, Lead PBX Operator.

Fremont:  Hotel Clerk I, Hotel Clerk II, Parking Attendant, PBX Operator.

CHC (during the 1987 taxable year):  Hotel Clerk I, Hotel Clerk II, Lead Parking Attendant, Parking Attendant, PBX Operator.

LABOR AGREEMENT between STARDUST HOTEL AND CASINO and INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVIE PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA, LOCAL 720, LAS VEGAS, NEVADA (THEATRICAL WARDROBE EMPLOYEES) (theatrical workers' agreement):

Stardust:  Alteration Attendant, Assistant Head Wardrobe, Assistant Wardrobe, Button Booth, Head Audio/Visual, Head Electrical/Sound, Head Projection, Head Flyman, Head Prop, Projectionist, Stagehand, Wardrobe Attendant, Cue Caller.

LABOR AGREEMENT between [blank space] and INTERNATIONAL UNION OF OPERATING ENGINEERS, Local No. 501, AFL-CIO (operating engineers' agreement) and the SLOT MECHANICS ADDENDUM TO MASTER LABOR AGREEMENT (slot mechanic workers' agreement):

Stardust:  Slot Shop Supervisors, Slot Tech I, Slot Tech II, Assistant Facility Manager, Maintenance Engineer Help, Maintenance Engineer, Maintenance Help.

Fremont:  Slot Tech II, Assistant Facility Manager, Laborer, Maintenance Engineer.

CHC:  Assistant Facility Manager, Maintenance Engineer, Maintenance Engineer Helper.

LABOR AGREEMENT between NEVADA RESORT ASSOCIATION and UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA LOCAL UNION NO. 1780, LAS VEGAS, NEVADA (carpenters' agreement):

<u>Stardust</u>:  Carpenter, Upholster.
<u>Fremont</u>:  Carpenter.
LABOR AGREEMENT BETWEEN STARDUST HOTEL and
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL
UNION # 357, AFL/CIO (electricians' agreement):

<u>Stardust</u>:  Electrician.

<u>Fremont</u>:  Electrician.

COLLECTIVE BARGAINING AGREEMENT between STARDUST HOTEL
AND CASINO and MUSICIANS UNION OF LAS VEGAS, LOCAL NO.
369 AMERICAN FEDERATION OF MUSICIANS, AFL/CIO
(musicians' agreement):

<u>Stardust</u>:  Musical performer, Musician,
Orchestra Leader.

LABOR AGREEMENT between NEVADA RESORT ASSOCIATION and
INTERNATIONAL BROTHERHOOD OF PAINTERS & ALLIED TRADES
LOCAL UNION NO. 159 AFL/CIO (painters' agreement):

<u>Stardust</u>:  Painter.

<u>Fremont</u>:  Painter.

All of these labor agreements have provisions that address

employee meals.  The culinary workers' agreement provides:

14.01.  <u>Meals Furnished by Employer</u>.  For the
convenience of the Employer, all employees covered by
this Agreement shall be required to take the meals
hereinafter provided for on the premises of the
Employer.  Said meals shall be palatable, wholesome and
comparable in quality to those served to customers.  A
selection of meal items shall be made available daily,
including at least two (2) meat entrees.  The selection
of meals shall be posted in the employees' cafeteria.
Breakfast, including eggs, will be available to all
shifts.  Employees shall have a choice of coffee, tea
or milk at each meal, and shall be entitled to a
dessert at each meal.  No entree shall be included on
the menu more than two (2) times in a calendar week.  A
fish entree shall be included at least once in a
calendar week.  The number of such meals shall be set
forth in Section 14.02.  Except as provided otherwise
in Section 14.02(a) and (b), the Employer shall allow
each employee an uninterrupted meal period of thirty
(30) minutes on the Employer's time, plus sufficient
time (not to exceed five (5) minutes each way) to go to
and from the eating area.

14.02.  Number of Meals.

(a) For the convenience of the Employer, all employees, except Bartenders, working full shifts shall be entitled to two (2) meals per day, one of which shall be eaten within one (1) hour before commencement of the shift and the second no sooner than three (3) and no later than five (5) hours after commencement of the shift.  Bartenders shall be entitled to one (1) meal to be eaten no sooner than three (3) and no later than five (5) hours after commencement of the shift.

(b) All employees working six (6) or four (4) hour shifts shall be entitled to one (1) meal per day. Employees working six (6) hour shifts shall eat no sooner than three (3) and no later than five (5) hours after commencement of the shift; and employees working four (4) hour shifts shall eat before their shift begins or after their shift ends.

One of the two Teamsters' agreements provides:

5.01.  WORKDAY AND OVERTIME.  The normal workday for regular, full-time employees shall consist of eight (8) hours including forty-five (45) minutes for a meal period and two (2) fifteen (15) minute rest periods during each shift.

*         *         *         *         *         *         *

16.01.  MEALS.  An employee shall receive one (1) meal during the course of his shift.  The meal will be scheduled as near to the middle of the shift as is possible, except for regular part-time employees working a short shift, who shall be provided with a prorated meal period after the third (3rd) hour worked.

At the option of the Employer, the employee may be paid one dollar and fifty cents ($1.50) in lieu thereof.

Meals served to employees shall be palatable, wholesome and comparable in quality to those served to the customers.  A selection of meal items shall be made available daily, including at least two (2) meat entres [sic].  No entree shall be included on the menu more than two (2) times in a calendar week.  A fish entree shall be carried at least once in a calendar week. Breakfast, including eggs, will be made available to all shifts.

When relieved from duty, an employee will be permitted to take assigned lunch and rest periods away from the immediate work area.

In recognition of the fact that the public restaurants of the establishments have been provided for the use of customers and guests * * *, it is agreed that the Employer retains the right to restrict or prohibit the use of these facilities by employees.

Employees relieved from duty will be permitted to leave the premises during their assigned lunch periods; provided they clock out at the commencement of such period and clock in at the conclusion thereof.

The other Teamsters' agreement provides:

5.01. WORKDAY. The normal workday for regular employees shall consist of eight (8) consecutive hours, including a lunch period. Employees working an eight (8) hour shift shall receive two (2) fifteen (15) minute rest periods on the Employer's time--one (1) prior to their meal period and one (1) following the meal period. The Employer shall allow each employee an uninterrupted meal period of thirty (30) minutes on the Employer's time plus sufficient time (not to exceed five (5) minutes each way) to go to and from the eating area.

\* \* \* \* \* \* \*

16.01. MEALS. Except as otherwise provided for herein, an employee shall receive one (1) meal during the course of an eight (8) hour shift, as near to the middle of the shift as possible or, at the option of the Employer, the employee may be paid one dollar and fifty cents ($1.50) in lieu thereof. Meals served to employees shall be palatable, wholesome and comparable in quality to those served to the customers. A selection of meal items shall be made available daily, including at least two (2) meat entrees. No entree shall be included on the menu more than two (2) times in a calendar week. A fish entree shall be carried at least once in a calendar week. Breakfast, including eggs, will be made available to all shifts. All employees shall be entitled to an uninterrupted meal period of thirty (30) minutes.

Golf course maintenance personnel, gardeners and laborers shall be paid a flat allowance of one dollar and fifty cents ($1.50) per day in lieu of a meal.

Employees relieved from duty will be permitted to leave the premises during their assigned lunch periods; provided they clock out at the commencement of such period and clock in at the conclusion thereof.

The theatrical workers' agreement provides:

13.01. Employees in the bargaining unit shall not be required to work more than five (5) hours without being allowed a meal break of at least one-half (1/2) hour, which meal period shall not be considered as time worked and shall not be paid for by the Employer. Time off between shows shall be deemed to constitute a meal period for the purpose of this Section.

Meal periods shall not exceed one (1) hour in duration and may not be granted sooner than two (2) hours after the employee begins work. Subsequent meal periods shall be called not less frequently than every five (5) hours and not more frequently than every three (3) hours after the completion of the first meal period of the day. Meal periods may be staggered among members of the crew. * * *

13.02. Penalties for Failure to Provide. In the event that an employee is not provided with a meal period, as provided in Section 13.01, he shall be paid at the rate of double (2X) the regular, straight-time hourly rate for the meal period omitted, and if a meal period is not provided after six (6) consecutive hours of work, the employee involved shall be paid at the rate of time and one-half (1 1/2X) his appropriate rate of pay for all work performed after six (6) consecutive hours until a meal period is provided. * * *

13.03. Rest Periods. Employees who are called in to work an eight (8) hour shift shall be granted two (2) ten (10) minute rest periods. The first such rest period shall be granted within the first four (4) hours of work and the second such rest period within the last four (4) hours worked.

13.04. Continuation of Present Practice. If, prior to April 1, 1984, the Employer was furnishing meals to employees free of charge, or at a discount, it shall continue to do so during the term of this Agreement.

The operating engineers' agreement provides:

17.01 Meals. An employee shall be entitled to receive one (1) meal during the course of an eight (8) hour

shift, as near to the middle of the shift as possible. If an employee is required to work overtime for two (2) hours or more beyond his regular shift, or is called out in an emergency and works for four (4) hours or more, he shall be entitled to a meal. Meals served to employees shall be palatable, wholesome and comparable in quality to those served to the customers. A selection of meal items shall be made available daily [including at least two (2) meat entrees]. An Employer who fails to provide meals as required above shall pay, as a penalty, the sum of One Dollar and Fifty Cents ($1.50) for each meal he failed to furnish.

The slot mechanic workers' agreement provides:

6.01  Workday and Workweek.  (a) The normal workday for regular employees shall consist of eight (8) consecutive hours, inclusive of a meal period. * * * The Employer shall allow each employee an uninterrupted meal period of thirty (30) minutes on the Employer's time, plus sufficient time (not to exceed five (5) minutes each way) to go to and from the eating area.

\*          \*          \*          \*          \*          \*          \*

17.01.  Meals.  An employee shall be entitled to receive one (1) meal during the course of an eight (8) hour shift, as near to the middle of the shift as possible.  If an employee is required to work overtime for two (2) hours or more beyond his regular shift, or is called out in an emergency and works for four (4) hours or more, he shall be entitled to a meal.  Meals served to employees shall be palatable, wholesome and comparable in quality to those served to the customers. A selection of meal items shall be made available daily [including at least two (2) meat entrees].  An Employer who fails to provide meals as required above shall pay, as a penalty, the sum of One Dollar and Fifty Cents ($1.50) for each such meal he failed to furnish.

The carpenters' agreement provides:

ARTICLE 16
Classification and Wage Rates

\*          \*          \*          \*          \*          \*          \*

Note 3:  Meals:  An employee shall be entitled to receive one (1) hot meal during the course of an eight (8) hour shift, as near to the middle of the shift as

possible.  If an employee is required to work overtime
for two (2) hours or more beyond his regular shift, or
is called out in an emergency and works for four (4)
hours or more, he shall be entitled to a meal.  Meals
served to employees shall be palatable, wholesome and
comparable in quality to those served to the customers.
A selection of meal items shall be made available daily
(including at least two (2) meat entrees).  An Employer
who fails to provide meals as required above shall pay,
as a penalty, the sum of one dollar and fifty cents
($1.50) for each such meal he failed to furnish.

The electricians' agreement provides:

6.01.  Work Day and Work Week.  (a) Eight (8)
consecutive hours, inclusive of a one-half (1/2) hour
meal period, within any twenty-four (24) hours shall
constitute a work week. * * *

\*          \*          \*          \*          \*          \*          \*

17.01.  Meals.  An employee shall receive one (1)
hot meal during the course of an eight (8) hour shift,
as near to the middle of the shift as possible, or, at
the option of the Employer, the employee may be paid
one dollar and fifty cents ($1.50) in lieu thereof.  If
an employee is required to work overtime for two (2)
hours or more beyond his regular shift, or is called
out in an emergency and works four (4) hours or more,
he shall be entitled to a meal.  Meals served to
employees shall be palatable, wholesome and comparable
in quality to those served to the customers.  A
selection of meal items shall be made available daily
(including at least two (2) meat entrees).  No entree
shall be included on the menu more than two (2) times
in a calendar week.  A fish entree shall be carried at
least once on a calendar week.

An Employer who fails to furnish employees with
meals, as required, shall be obligated to pay a penalty
of one dollar and fifty cents ($1.50) to the employee
for each such meal he failed to provide.

The musicians' agreement provides:

12.02. Rehearsal Meal Periods.  During any
rehearsal called before twelve o'clock (12:00) noon, a
lunch period of forty-five (45) minutes, at no cost to
the Employer, must be allowed during the first three
(3) hours.  If such rehearsal continues, a second meal

period of forty-five (45) minutes, at no cost to the Employer, shall be provided six (6) hours after the end of the first meal period. Except in cases of rehearsals called before twelve o'clock (12:00) noon, as provided above, it is agreed that a lunch period of forty-five (45) minutes, at no cost to the Employer, shall be allowed after six (6) hours of rehearsal.

The painters' agreement provides:

16.03.(a) Meals. An employee shall receive one (1) hot meal during the course of an eight (8) hour shift, as near to the middle of the shift as possible. If an employee is required to work overtime for two (2) hours or more beyond his regular shift, or is called out in an emergency and works four (4) hours or more, he shall be entitled to a meal. Meals served to employees shall be palatable, wholesome and comparable in quality to those served to the customers. A selection of meal items shall be made available daily (including at least two (2) meat entrees). No entree shall be included on the menu more than two (2) times in a calendar week. A fish entree shall be carried at least once in a calendar week.

An Employer who fails to furnish employees with meals, as required, shall be obligated to pay a penalty of one dollar and fifty cents ($1.50) to the employee for each such meal he failed to provide.

The Properties are open 24 hours a day, 7 days a week, and petitioners try to have employees available around the clock to meet customer needs. Petitioners generally assign each employee to one of the following shifts:

| Shift 1 (Graveyard) | Begins at or after 10 p.m. |
| Shift 2 (Day) | Begins at or after 6 a.m. |
| Shift 3 (Swing) | Begins at or after 3 p.m. |
| Shift 4 (Relief) | Combines 2 or more shifts per workweek |

Employees are assigned to their shifts according to the needs of a department, and each employee's assignment of shift differs by department, job classification, and Property. The record does not disclose which or how many employees are assigned to each

shift, or the hours per day worked by each or any of the employees.[3]

Meal breaks range in length from 30 to 60 minutes, and the length of an employee's break depends primarily on the Property where he or she works, as well as his or her job classification. Each department decides how its employees will take their breaks, and petitioners stagger the employees' breaks (and shifts) so that enough employees are working at all times. Some employees are cross-trained to fill in for employees who are on a break or otherwise to provide extra help when needed. Petitioners generally require that employees stay on the premises during their shifts (including breaks), and, under petitioners' policy, an employee who leaves during his or her shift, without authorization, is subject to disciplinary action up to and including dismissal. No employee was disciplined during the subject years for leaving the premises during a break. It is petitioners' stated policy that they may call an employee back to his or her job from a break in case of necessity. Petitioners do not typically do so. Typically, in case of necessity, an employee will postpone his or her break and take the break when the necessity subsides. Petitioners keep no records on the employees who have been called back to work from a break.

---

[3] The record discloses only that a majority of the custodians at the Stardust work an 8-hour shift beginning at either 12 a.m. or 1 a.m., and that a majority of the guest room attendants at the Stardust work during the day.

In case of a fire, bomb threat, or similar crisis, petitioners' policy requires nonmanagerial employees who are at their work sites at the time of the crisis to secure their work areas and leave the building immediately, while, on their way out, advising patrons of the need to leave the building. Nonmanagerial employees who are on a break during a crisis are instructed not to return to their work areas but to leave the building immediately while, on their way out, advising patrons of the need to leave the building. Managers are mainly responsible during a crisis to oversee the evacuation of the building. Petitioners have not had to evacuate CHC during the period from 1976 to date, and the record does not indicate that any of the other Properties were evacuated during this same time period. CHC has had one bomb threat and one hostage situation from 1976 to date.

Some employees wear uniforms while on duty. (The table lists these employees by job description.) A cocktail waitress, for example, wears a very short black dress, and a dealer wears a pair of black slacks and a Hawaiian-style shirt. Each employee's uniform is specific to the Property at which he or she works, and the uniform tends to identify the employee as an employee of that Property. Employees are allowed to wear their uniforms to and from work, or they may change into their uniforms at the Properties in a room provided by petitioners; petitioners also provide their employees with storage space for their clothing.

Petitioners do not limit an employee's activities when he or she travel to or from work in uniform. The employees who travel from work in uniforms typically change their uniforms before going out on personal business after work, but some uniformed employees have gone out after work in uniform and eaten at a competitor's restaurant.

Petitioners make no attempt to account for the actual cost of the meals that are served at the Cafeterias. In the case of Stardust, petitioners expense a flat charge per month, regardless of the number of meals served, based on an estimate of food costs that was made before the subject years. For the other Properties, petitioners multiply a fixed amount (ranging from $1.75 to $2) by the number of full-time employees on the rolls of each department in each month. In accordance with this expending policy, petitioners ascertained that their direct costs for the Cafeterias for the 1987 and 1988 taxable years were as follows:

|  | 1987 | 1988 |
|---|---|---|
| CHC | $459,205 | $616,483 |
| Fremont | 372,705 | 388,546 |
| Sam's Town | 741,366 | 811,628 |
| Stardust | 1,215,638 | 2,030,010 |
| Total | 2,788,914 | 3,846,667 |

Petitioners deducted all of these costs, with the exception of the following amounts for 1987:

| | |
|---|---|
| CHC | $68,044 |
| Fremont | 45,781 |
| Sam's Town | 98,012 |
| Stardust | 145,978 |
| Total | 357,815 |

Respondent determined (and reflected in the notices of deficiency) that petitioners could not deduct the following amounts on account of section 274(n):

|  | 1987 | 1988 |
|---|---|---|
| CHC | $23,797 | $102,027 |
| Fremont | 28,760 | 77,709 |
| Sam's Town | 59,651 | 171,446 |
| Stardust | 97,150 | 406,002 |
| Total | 209,358 | 757,184 |

In its petition, CHC alleges that it did not deduct 20 percent of the cost of the meals for its 1987 taxable year, and that it is entitled to do so.

OPINION

We must decide whether the meals are a de minimis fringe benefit for purposes of section 274(n)(2)(B).[4]  The meals are a

---

[4] Sec. 274(n), which was added to the Code by sec. 142(b) of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, 100 Stat. 2085, 2118, provides in relevant part:

> (1) In general.--The amount allowable as a deduction under this chapter for--
>
> (A) any expense for food or beverages, and
>
> *     *     *     *     *     *     *
>
> shall not exceed 80 percent [sec. 13,209(a) of the Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, 107 Stat. 312, 424-425, changed this amount to 50 percent for taxable years beginning after Dec. 31, 1993] of the amount of such expense or item which would (but for this paragraph) be allowable as a deduction under this chapter.
>
> (2) Exceptions.--Paragraph (1) shall not apply to
>
> (continued...)

de minimis fringe benefit if the meals meet the requirements of section 132(e)(2),[5] which, in turn, requires that the meals meet the five-prong test (the Boyd test) set forth by the Court in Boyd Gaming Corp. v. Commissioner, 106 T.C. at 348. The outcome turns on whether petitioners furnished meals to each of substantially all of their employees for a substantial noncompensatory business reason within the meaning of section 119 and the regulations thereunder.

We set forth our analysis as follows. First, we analyze the Boyd test and the general principles of law that relate thereto. Second, we analyze petitioners' reasons for furnishing the meals

---

[4](...continued)
any expense if--

    *        *        *        *        *        *        *

        (B) in the case of an expense for food or beverages, such expense is excludable from the gross income of the recipient under section 132 by reason of subsection (e) thereof (relating to de minimis fringes),


[5] Sec. 132(e)(2) provides:

    (2) Treatment of certain eating facilities.--The operation by an employer of any eating facility for employees shall be treated as a de minimis fringe if--

        (A) such facility is located on or near the business premises of the employer, and

        (B) revenue derived from such facility normally equals or exceeds the direct operating costs of such facility. * * *

to their employees.  Third, we analyze whether petitioners furnished the meals at each of the Properties to each of substantially all of their employees at the Property for the convenience of the employer.  In other words, with respect to each year, we look at each employee and determine whether section 119 allows him or her to exclude the value of the meals from gross income, and we then determine whether the number of employees at each Property who may exclude their meals comprises substantially all of the employees at that Property.  For purposes of this litigation, the parties have stipulated whether section 119 excludes the meals of employees in certain job descriptions.  Respondent has conceded that the meals received by employees in the following job descriptions are excludable under section 119:

CHC

> Casino:  Dealer Dice, Dealer 21

> Engineering:  Maintenance Engineer, Maintenance Engineer Helper

> Food and Beverage:  Food and Beverage Director, Executive Chef, Beverage Manager, Assistant Food Director, Assistant Chef, Restaurant Manager, Food Shift Supervisor, Host Person, Sous Chef, Kitchen Runner, Bus Person, Cashier--Food, Dining Room Runner, Food Server, Lead Kitchen Help, Kitchen Help, Lead Line Cook, Line Cook, Prep Cook III, Prep Cook II, Prep Cook I, Snack Bar Attendant, Special Bus Person, Special Food Server, Special Lead Line Cook, Special Line Cook, Banquet Server

> MIS:  Computer Operator

Security:  Security Manager, Assistant Security Manager, Security Shift, Security Dispatcher, Security Officer/In, Surveillance Agent, Security Officer/Out

Fremont

Casino:  Dealer Dice, Dealer 21, Dealer-Card Room

Engineering:  Maintenance Engineer

Food and Beverage:  Assistant Beverage Manager, Assistant Chef, Beverage Manager, Bus-Buffet, Bus Person, Butcher, Cashier--Food, Dining Room Runner, Executive Kitchen Steward, Executive Chef, Food Shift Supervisor, Food Director, Food Server, Host Person, Kitchen Help, Lead Kitchen Help, Line Cook, Maitre' D Hotel, Prep Cook I, Prep Cook II, Prep Cook III, Restaurant Operating Manager, Restaurant Manager, Snack Bar Attendant, Special Room Chef, Special Room Hand Person, Special Bus Person, Special Food Server, Special Line Cook, Specialty Runner

MIS:  Computer Operator

Security:  Security Officer/In, Security Officer/Out, Security Dispatcher, Security Manager, Security Shift, Surveillance Agent

Sam's Town

Casino:  Dealer 21, Dealer Dice, Dealer--Card Room

Engineering:  Maintenance Engineer, Maintenance Engineer Helper

Food and Beverage:  Assistant Chef, Banquet Server, Beverage Manager, Beverage Shift Supervisor, Bus Person, Cashier--Food, Dance Instructor, Dining Room Runner, Disc Jockey, Door Person, Executive Chef, Food Operator Analysis, Food Shift Supervisor, Food Director, Food Server, Host Person, Kitchen Help, Lead Kitchen Help, Lead Line Cook, Line Cook, Prep Cook I, Prep Cook II, Prep Cook III, Restaurant Manager, Snack Bar Attendant, Snack Vendor, Sous Chef, Special Room Chef, Special Bus Person, Special Food Server, Special Lead Line Cook, Special Line Cook, Store Attendant, Supply Runner, Western Dance Manager

MIS:  Computer Operator

Security:  Assistant Security Manager, Security Officer/Out, Security Dispatcher, Security Manager, Security Officer/In, Security Shift, Surveillance Agent

Stardust

Casino:  Dealer 21, Dealer Dice, Dealer--Card Room

Engineering:  Maintenance Engineer Helper, Maintenance Engineer

Food and Beverage:  Assistant Chef, Baker, Baker Helper, Beverage Manager, Beverage Shift Supervisor, Bus-Buffet, Bus Person, Butcher, Captain, Cashier-- Food, Dining Room Runner, Executive Kitchen Chef, Executive Chef, Food/Beverage Director, Food Shift Supervisor, Food Server, Head Cashier, Host Person, Kitchen Help, Lead Kitchen Help, Line Cook, Maitre' D Hotel, Pastry Chef, Prep Cook I, Prep Cook II, Prep Cook III, Restaurant Operations Manager, Restaurant Manager, Room Service Bus, Room Service Server, Showroom Server, Snack Bar Attendant, Sous Chef, Special Room Chef, Special Room Hand Person, Special Bus Person, Special Food Server, Special Line Cook, Supply Runner Warehouse, Supply Runner, Storeroom Attendant, Warehouse Supervisor

MIS:  Computer Operator

Security:  Assistant Chief Security, Lead Security Officer, Security Dispatcher, Security Manager, Security Officer/In, Security Shift, Surveillance Agent

Petitioners have conceded that the meals received by employees in the following job descriptions are not excludable under section 119, unless the employee works the graveyard shift or unless section 1.119-1(a)(ii)(e), Income Tax Regs., applies:

CHC

Accounting:  Controller, Assistant Controller, Payroll Supervisor, Chief Accountant, Accounting Clerk Supervisor, Accounting Clerk IV, Accounting Clerk III, Accounting Clerk II

Administrative:  Employee Relations Development Manager, Human Resources Specialist, Director of Human Resources, Employee Relations Manager, Office Manager, Secretary, Administrative Clerk, Purchasing Agent,

Casino:  Director of Gaming School, Gaming School Instructor

Sales & Marketing:  Director of Sales, Director of Advertising/Public/Promotions, Advertising and Publication Manager, Publicity/Promotions/Advertising Assistant, Group Sales Manager, Group Sales Representative, Promotions Attendant

Fremont

Accounting:  Accounting Clerk IV, Accounting Clerk III, Accounting Clerk II, Accounting Clerk I, Accounting Clerk V, Assistant Controller, Controller, Inventory Control, Payroll Supervisor, Senior Accountant

Administrative:  Administrative Clerk, Director Internal Operations/Human Resources, Employee Relations/Development, Employee Relations Manager, Employment Clerk, Human Resource Specialist, Purchasing Agent, Receptionist, Secretary

Sales & Marketing:  Advertising and Publication Manager, Director Advertising/Publicity/Promotions, Group Sales Representative, Group Sales Manager, Promotions/Special Events Manager, Promotions Assistant, Promotions Attendant, Public Coordinator, Sales Account Executive, Director/Manager Publication, Direct Mail Clerk, Market Operations Analyst

Sam's Town

Accounting:  Accounting Clerk IV, Accounting Clerk Supervisor, Accounting Clerk I, Accounting Clerk II, Accounting Clerk III, Assistant Controller, Chief Accountant, Conference Paymaster, Controller, Vending Machine Attendant

Administrative:  Administrative Clerk, Director of Human Resources, Employment Supervisor, Employment Clerk, Purchasing Agent, Receptionist, Secretary

<u>Hotel</u>:  Sales Clerk, Sales Clerk/Cashier, Sales/Commissions, Store Lead Cashier

<u>Sales & Marketing</u>:  Marketing Director, Marketing Operation Analyst, Publicity/Promotions/Advertising Assistant

<u>Stardust</u>

<u>Accounting</u>:  Accounting Clerk IV, Accounting Clerk III, Accounting Clerk II, Accounting Clerk I, Accounting Clerk Supervisor, Assistant Controller, Controller, Credit Clerk II, Food & Beverage Comptroller, Internal Control Specialist, Inventory Control, Senior Accountant, Vending Machine Attendant

<u>Administrative</u>:  Administrative Assistant, Administrative Clerk, Director Human Resources, Director Administration, Employee Relations/Development, Employee Relations/Development Manager, Employment Supervisor, Human Resource Staff Assistant, Purchasing Agent, Receptionist, Runner, Safety Loss Manager, Secretary, Senior Purchasing Agent

<u>Sales & Marketing</u>:  Advertising Manager, Director Marketing, Director Marketing Manager, Direct Mail Clerk, Group Sales Manager, Market Operations Analyst, Market Operator Analyst, Promotions/Special Events Manager, Promotions Attendant, Promotions Director, Sales Account Ex, Sales Account Executive

Turning first to the <u>Boyd</u> test, which is applied separately to each eating facility at issue, we find that employee meals which are provided by an employer on a nondiscriminatory basis are a de minimis fringe benefit under section 132(e) if:  (1) The eating facility is owned or leased by the employer, (2) the facility is operated by the employer, (3) the facility is located on or near the business premises of the employer, (4) the meals furnished at the facility are provided during, or immediately before or after, the employee's workday, and (5) the annual

revenue derived from the facility equals or exceeds the direct operating costs of the facility (the revenue/operating cost test).  Boyd Gaming Corp. v. Commissioner, 106 T.C. at 348; see also sec. 132(e)(2); sec. 1.132-7(a), Income Tax Regs.  The parties focus mainly on the revenue/operating cost test.  So do we.  For purposes of the revenue/operating cost test, an employer may disregard the cost and revenue for each employee meal that the employer determines reasonably is excludable from the recipient's gross income under section 119.  Sec. 1.132-7(a)(2), Income Tax Regs.[6]  Section 119(a) excludes from the recipient's gross income "the value of any meals * * * furnished to him, his spouse, or any of his dependents by or on behalf of his employer for the convenience of the employer, but only if * * * the meals are furnished on the business premises of the employer".  Sec. 119(a).

The parties agree that section 119 allows some, but not all, of petitioners' employees to exclude from gross income the value of meals received from their employers.  The parties dispute whether section 119 allows each of substantially all of the employees to exclude the value of the meals from gross income.

---

[6] Sec. 1.132-7(a)(2), Income Tax Regs., provides:

If an employer can reasonably determine the number of meals that are excludable from income by the recipient employees under section 119, the employer may, in determining whether the * * * [revenue/operating cost test] is satisfied, disregard all costs and revenues attributable to such meals provided to such employees.

If section 119 provides for such an allowance, section 1.119-1(a)(2)(ii)(e), Income Tax Regs., allows petitioners to deduct 100 percent of the costs incurred to provide the meals.[7] Boyd Gaming Corp v. Commissioner, 106 T.C. 343 (1996); see also sec. 274(n)(2)(B); sec. 1.132-7(a)(2), Income Tax Regs. If section 119 does not provide for such an allowance, petitioners' deductions for the meals are limited by section 274(n)(1) to 80 percent of the cost of the meals.

Petitioners argue that section 119 allows each of substantially all of the employees to exclude the value of the meals from gross income. According to petitioners, they had substantial noncompensatory business reasons for providing meals to each of substantially all of their employees, and petitioners determined reasonably that the meals were excludable from each employee's gross income under section 119. Respondent counters that petitioners cannot determine the number of meals excludable from gross income under section 119, which is a prerequisite to the application of section 1.132-7(a)(2), Income Tax Regs., because petitioners failed to keep the required documentation to

---

[7] Sec. 1.119-1(a)(2)(ii)(e), Income Tax Regs., provides:

If the employer furnishes meals to employees at a place of business and the reason for furnishing the meals to each of substantially all of the employees who are furnished the meals is a substantial noncompensatory business reason of the employer, the meals furnished to each other employee will also be regarded as furnished for a substantial noncompensatory business reason of the employer.

establish, among other things, the number of meals eaten, by whom

the meals were eaten, or at what time the meals were eaten.

Respondent also argues that substantially all of petitioners'

employees did not receive the meals for a substantial

noncompensatory business reason because less than 90 percent of

the employees qualified for the section 119 exclusion.

Respondent relies on section 1.119-1(f), Example (9), Income Tax

Regs., in asserting that the "substantially all" test of section

1.119-1(a)(2)(e), Income Tax Regs., requires that at least

90 percent of the meals received by the employees be excludable

under section 119.  Section 1.119-1(f), Example (9), Income Tax

Regs., sets forth an example under which 91.3 percent of the

taxpayer's employees is "substantially all" of the taxpayer's

employees within the meaning of the regulations.  This example

states:

> A hospital maintains a cafeteria on its premises where
> all of its 230 employees may obtain a meal during their
> working hours.  No charge is made for these meals.  The
> hospital furnishes such meals in order to have each of
> 210 of the employees available for any emergencies that
> may occur, and it is shown that each such employee is
> at times called upon to perform services during his
> meal period.  Although the hospital does not require
> such employees to remain on the premises during meal
> periods, they rarely leave the hospital during their
> meal period.  Since the hospital furnishes meals to
> each of substantially all of its employees in order to
> have each of them available for emergency call during
> his meal period, all of the hospital employees who
> obtain their meals in the hospital cafeteria may
> exclude from their gross income the value of such
> meals.

We agree with respondent that section 119 does not allow each of substantially all of petitioners' employees to exclude the value of the meals from gross income.[8] We start our analysis with section 61(a). Section 61(a) includes in gross income all income from whatever source derived, absent a contrary provision in subtitle A of the Code (sections 1 to 1563). The definition of gross income under section 61(a) broadly encompasses any accession to a taxpayer's wealth. United States v. Burke, 504 U.S. 229 (1992); Commissioner v. Kowalski, 434 U.S. 77, 82-83 (1977); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); Helvering v. Clifford, 309 U.S. 331, 334 (1940). Exclusions from gross income, by contrast, are matters of legislative grace and are construed narrowly to maximize the taxation of any accession to wealth. United States v. Burke, supra at 248 (Souter, J., concurring in the judgment); United States v. Centennial Sav. Bank FSB, 499 U.S. 573, 583 (1991);

---

[8] At the outset, we note that petitioners misinterpret a sentence in Boyd Gaming Corp. v. Commissioner, 106 T.C. 343 (1996), in asserting that their "reasonable belief" that the full cost of the meals are excludable from gross income under sec. 119 is enough to come within sec. 1.132-7(a)(2), Income Tax Regs. The sentence states that "petitioners may deduct the meals' full cost if they reasonably determine that the meals are excludable from their employees' incomes under section 119." Id. at 353. Taken in context, this sentence means that petitioners may deduct the full cost of the meals if 100 percent of the meals are excludable from gross income. Respondent also misconstrues the breadth of this sentence. Contrary to respondent's assertion, petitioners do not have to prove the exact number of meals subject to sec. 119 if that section excludes 100 percent of the meals.

Commissioner v. Jacobson, 336 U.S. 28, 49 (1949); Robinson v. Commissioner, 102 T.C. 116, 124-125 (1994), affd. in part, revd. in part on another issue, and remanded 70 F.3d 34 (5th Cir. 1995). Given the broad sweep of inclusions vis-a-vis the narrow construction of exclusions, it naturally follows that an accession to wealth is prima facie includable in gross income under section 61(a) unless an exclusion in sections 1 through 1563 clearly directs otherwise. United States v. Burke, supra at 248 (Souter, J., concurring in the judgment); United States v. Centennial Sav. Bank FSB, supra at 1519; Commissioner v. Jacobson, supra at 49; Robinson v. Commissioner, supra at 125; see Commissioner v. Kowalski, supra at 83.

Petitioners argue that substantially all of the meals are excludable from the gross income of the recipient employees under the exclusion of section 119. From the text of section 119, we understand that the gross income of an employee who meets a two-prong test does not include the value of a meal received from his or her employer. Under the first prong, the meal must be furnished by the employer on its business premises. Under the second prong, the meal must be furnished to the employee for the convenience of the employer. See also sec. 1.119-1(a)(1), Income Tax Regs. Since the parties do not dispute the first prong, we limit our focus to the second prong, deciding only the question of whether each employer at issue provided each meal to each of its employees for the convenience of the employer.

Whether an employer provides a meal to an employee for the employer's convenience rests primarily on whether the meal is provided to the employee for a substantial noncompensatory business reason of the employer. See sec. 1.119-1(a)(2)(i) and (ii)(e), Income Tax Regs. Such a determination is factual, Jacob v. United States, 493 F.2d 1294, 1297 (3d Cir. 1974); Olkjer v. Commissioner, 32 T.C. 464, 468 (1959); sec. 1.119-1(a)(1), Income Tax Regs., and petitioners bear the burden of proof, Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Caratan v. Commissioner, 442 F.2d 606, 608 (9th Cir. 1971), revg. 52 T.C. 960 (1969); American Pipe & Steel Corp. v. Commissioner, 243 F.2d 125, 126-127 (9th Cir. 1957), affg. 25 T.C. 351 (1955); Olkjer v. Commissioner, supra at 468. A substantial noncompensatory business reason requires a business nexus under which the "employee must accept * * * [the] meals * * * in order properly to perform his duties." Commissioner v. Kowalski, supra at 93 (quoting S. Rept. 1622, 83d Cong., 2d Sess. 190 (1954)); see also Van Rosen v. Commissioner, 17 T.C. 834, 838 (1951). That the employer may characterize the meal as noncompensatory, or that the employer intends that the employee receive the meal without tax consequences, is of no relevance to the application of section 119. Commissioner v. Kowalski, supra at 88-95. The same is true with respect to whether the employee could perform his or her job absent the meal. A meal need not be indispensable to an

employee's duties to be excludable under section 119.  See
Caratan v. Commissioner, supra at 609.

We believe that certain factors are helpful in determining
whether an employer provides a free meal to an employee for a
substantial noncompensatory business reason of the employer.  The
presence of a substantial noncompensatory business reason
establishes that a meal is provided for the convenience of the
employer and makes unimportant whether the employer also provides
the meal to the employee as a source of additional compensation.
We use the following factors to aid us in our analysis:
(1) Whether the employer furnishes a meal to an employee before,
during, or after the employee's work period, (2) whether the
employer requires an employee to live on the employer's business
premises as a condition of employment, (3) whether the employer
furnishes a meal to an employee during the employee's working
hours so that he or she is available to respond to emergencies of
the employer that arise during the meal period, (4) whether the
employer furnishes a meal to an employee during the employee's
working hours because the employer's business demands that the
employee's meal period be short and the employee cannot be
expected to eat elsewhere in such a short period of time,
(5) whether the employer furnishes a meal to an employee during
the employee's working hours because the employee cannot
otherwise secure a proper meal within a reasonable meal period,
(6) whether the employer furnishes a meal to a food service

employee (e.g., a restaurant employee) for a meal period during which the employee works, (7) whether the employer furnishes a meal to an employee to promote the employee's morale or goodwill, (8) whether the employer furnishes a meal to an employee to attract prospective employees, and (9) whether the employer furnishes a meal to an employee under an employment contract or a statute that characterizes the meal as compensation. Some of these factors are dispositive, in and of themselves, and the weight given to each factor rests on the factor involved. In analyzing each factor, little weight is given to the unsupported declarations of witnesses, sec. 1.119-1(a)(2), Income Tax Regs.; see also Incorporated Trustees v. United States, 777 F.2d 1552, 1555 n.10 (Fed. Cir. 1985), and more weight is given to facts which are supported by the record as a whole. Section 119 is applied on a meal-by-meal basis.

1. Timing of Meal

A meal must be furnished to an employee on a working day in order to fall within section 119. Sec. 1.119-1(a)(2), Income Tax Regs.; see also Bob Jones Univ. v. United States, 229 Ct. Cl. 340, 670 F.2d 167, 178 (1982). The mere fact that a meal is furnished to an employee on a working day, however, does not mean that the meal meets the requirements of section 119. With two exceptions, a meal that is furnished on a working day is outside section 119 if the meal is furnished before or after the employee's working hours. Sec. 1.119-1(a)(2), Income Tax Regs.; see also Bob Jones Univ. v. United States, supra at 178. First,

the fact that a food service employee receives a meal for each meal period during which he or she works will not disqualify a meal from section 119, as long as the meal is eaten by the employee on the working day. Sec. 1.119-1(a)(2)(i) and (ii)(d), Income Tax Regs. Second, the fact that a non-food-service employee receives a meal immediately before or immediately after his or her working hours will not remove the meal from section 119 if the employee's duties prevent him or her from eating the meal during working hours. Sec. 1.119-1(a)(2)(i) and (ii)(f), Income Tax Regs. In the case of both exceptions, however, the meal must be furnished to the employee for a meal period during which he or she works. A meal that is furnished to an employee for a meal period other than one during which he or she works is outside section 119. A meal furnished to an employee for a meal period during which he or she does not work is furnished solely as compensation; the meal is not needed to allow the employee to perform his or her duties. See Commissioner v. Kowalski, 434 U.S. at 93.

Some of the employees in question receive at least two meals during an 8-hour shift. One of these meals is eaten up to 1 hour before the shift starts, and the second meal is eaten from 3 to 5 hours after the shift begins. The job descriptions of these employees are as follows:

Fremont

Casino: Carousel Attendant, Change Attendant

Food & Beverage: Barback, Cocktail Server

Hotel:  Bell Captain, Bell Person, Custodian I, Custodian II, Guest Room Attendant, Lead Custodian, Linen Room Attendant, Status Board Operator

Stardust

Casino:  Booth Cashier, Carousel Attendant, Change Attendant

Food & Beverage:  Barback, Cocktail Server

Hotel:  Alteration Attendant, Bell Captain, Bell Person, Custodian I, Custodian II, Guest Room Attendant, Linen Room Attendant, Linen Room Supervisor, Status Board Operator

The first meals are outside the reach of section 119.  These meals are not necessary to allow these employees to perform their jobs properly.[9]  The regulations extend section 119 to a case where a meal is eaten "immediately before" or "immediately after" the start of a shift if the employee's duties prevent him or her from eating the meal during working hours.  See sec. 1.119-1(a)(2)(i) and (ii)(f), Income Tax Regs.  In other cases, except those that apply to food service employees, a meal eaten before the start of a shift ordinarily does not qualify for exclusion under section 119.  Thus, despite the careful wording in the culinary workers' agreement that the meals are "For the convenience of the employer", wording which we decline to accept as dispositive, we conclude that the first meals are provided purely as compensation and not for the convenience of the

_____

[9] Although most of these employees are covered by the culinary workers' agreement, none of these employees is a "restaurant employee or other food service employee" within the meaning of sec. 1.119-1(a)(2)(ii)(d), Income Tax Regs.  See infra pp. 73-74, for our discussion on the inapplicability of this language to the barbacks and cocktail servers.

employer.  In so concluding, we decline petitioners' invitation to treat all of these employees as "food service employees" simply because they are covered by the culinary workers' agreement.

Section 119 also does not reach any meal that is eaten by petitioners' employees on a nonworking day or by persons who do not work for petitioners.  Although petitioners' policy is to preclude employees from eating meals in the Cafeterias on days off and to preclude nonemployees from eating in the Cafeterias at all, petitioners do not actively police or monitor this policy. We are unpersuaded that petitioners' policy on this subject is adhered to by the employees.  We find in the record that petitioners' employees have access to the Cafeterias on their days off and that petitioners do not document the receipt of employee meals in the Cafeterias or the receipt of meals in the public restaurants by the employees who are allowed to eat there without charge.[10]  We also find that nonemployees may easily enter the Cafeterias with employees, and that petitioners' lack of documentation on the meals similarly precludes us from finding that these nonemployees do not eat meals in the Cafeterias.

Petitioners elicited testimony from Mr. Thompson to the effect that employees never ate two meals.  Mr. Thompson stated that he had "general knowledge" that these employees generally

---

[10] Contrary to the testimony of petitioners' management, we find it hard to believe that an employee would question the number of times that a manager ate in the Cafeterias or public restaurants on a given day.

did not eat two meals because: (1) He ate twice a day in the Cafeteria on his premises, seeing everyone who ate there, and (2) petitioners had used a punch card system in prior years to monitor the employees' receipt of meals, and these cards seldom had two punches. We find this testimony unpersuasive and do not rely on it. See Ruark v. Commissioner, 449 F.2d 311, 312 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-48; Clark v. Commissioner, 266 F.2d 698, 708-709 (9th Cir. 1959), affg. in part and remanding T.C. Memo. 1957-129; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The punch card system preceded the subject years, and Mr. Thompson's testimony is contradicted directly by the testimony of Messrs. Miner and Fraser. Mr. Miner testified that his firsthand experience was that most of the employees who were entitled to two meals ate both meals. Mr. Fraser testified that petitioners had experienced problems with employees taking unauthorized meals. We also do not see how Mr. Thompson's mere presence in the Cafeteria for 2 hours at the most could allow him to monitor effectively the number of meals eaten there by each of the employees. In addition, Mr. Thompson admitted at trial that he ate two meals a day in the Cafeterias throughout the subject years, yet his job classification afforded him only one meal.

With respect to the employees mentioned above who ate two meals a day, we hold that the first meals are not excludable under section 119.

Nor does section 119 reach two meals that are eaten by a non-food-service employee during one 8-hour shift.  In the case at hand, however, employees are allowed to enter the Cafeterias freely and inconspicuously during their shifts.  Which employees eat more than one meal during their shifts we do not know.  We do know, however, that employees have been disciplined, suspended, and/or dismissed for violating petitioners' policy on the Cafeterias.  We also know that petitioners construe the word "meal" broadly to reach almost any food that is eaten by an employee during all breaks in a shift.  With such a broad interpretation we do not agree.  We construe the word "meal" to mean "The food served and eaten in one sitting", a definition which has existed since the 13th century.  Webster's II New Riverside University Dictionary 735 (1994).  Thus, an employee who eats a separate course during each of his or her three breaks is eating three meals, rather than the one that petitioners allege.  Accordingly, two of these meals do not qualify for exclusion under section 119.

### 2. Required To Live on Business Premises

A meal furnished without charge to an employee required to live on the employer's business premises as a condition of employment is within section 119 if the meal is furnished on the business premises.  Sec. 1.119-1(a)(2), Income Tax Regs.

The record does not disclose that any of petitioners' employees live on the Properties.  Accordingly, we do not analyze this factor.

### 3.  Available for Emergencies

An employer furnishes a meal to an employee for a substantial noncompensatory business reason if the employer requires that the employee be available during meal periods to respond to emergencies.  Sec. 1.119-1(a)(2)(ii)(a), Income Tax Regs.  Critical to this factor is that:  (1) Emergencies have occurred in the employer's business during the employee's meal period which have required the employer to call the employee back to his or her job during the period or (2) it is reasonable for the employer to expect that emergencies will occur in its business during the employee's meal period which will require the employer to call the employee back to his or her job during the period in order to respond to the emergency.  Sec. 1.119-1(a)(2)(ii)(a), Income Tax Regs.; see also Jacob v. United States, 493 F.2d at 1298.  The mere fact that corporate policy requires an employee to remain on the premises during meal breaks does not necessarily mean that a meal provided by the employer is provided for a noncompensatory business reason of the employer. See Commissioner v. Kowalski, 434 U.S. at 93 (quoting S. Rept. 1622, 83d Cong., 2d Sess. 190 (1954)) (meals are excludable only if the "employee must accept * * * [the] meals * * * in order properly to perform his duties"); Caratan v. Commissioner, 442 F.2d at 609 n.4; see also sec. 1.119-1(a)(2)(i), Income Tax Regs. (section 119 excludes from gross income the value of lodging that an employee must occupy on the premises only when the lodging is "required * * * as a condition of his employment").

Petitioners argue that section 119 applies to most of the employees in question because petitioners require them to stay on the premises during meal periods to handle emergencies which may and do occur. Petitioners list the following happenings as emergencies of their business: Plumbing and electrical problems, backed-up hotel or restaurant lines, jackpot payouts, a surge in gambling, equipment failures, bomb threats, and fires. Petitioners argue that their management, through the exercise of their business judgment, have concluded that the exigencies of petitioners' business mandate that all employees in specified categories remain on the premises during their full shifts in order to respond to emergencies.

We disagree with petitioners that those employees must stay on the premises to respond to emergencies that could occur during their meal breaks. Unlike petitioners, who for this purpose describe some fairly routine occurrences as emergencies, we read the word "emergency" more narrowly to mean an "unexpected, serious occurrence or situation urgently requiring prompt action." Webster's II New Riverside University Dictionary 427 (1994). The situations petitioners refer to as emergencies may in the eyes of petitioners' management demand a quick response by petitioners in order to keep their business profitable and competitive, but all these happenings are not emergencies within the meaning of the regulations. In any case, petitioners have not shown that they are required to furnish free meals to their

employees in order to assure a prompt and orderly response to these situations.

We do not substitute our judgment for the business judgment of petitioners' management to the effect that it was wise for petitioners to give their employees free meals. Instead, we look to the objective facts of this case and see that some, but far from all, of petitioners' employees must be available during their meal periods to respond to emergencies that could possibly arise in petitioners' business. We find from the objective facts of this case that petitioners' employees were hired mainly (if not solely) to perform duties concerning the operation of a casino in its regular course of business, and that petitioners' past experiences indicate that the occurrence of a true emergency, such as a fire or bomb scare, during petitioners' operations is a rarity. The duties of very few of the employees in dispute include responding to emergencies at the beck and call of management.[11] To the contrary, some of the labor agreements state specifically that employees covered by those

---

[11] The record includes a list of the essential job functions for most of the employees at issue. Petitioners, however, prepared this list after the subject years; petitioners did not prepare or keep a contemporaneous written description of the duties of each job classification during the subject years. Given the additional fact that the record does not indicate the extent to which the employees in each job description performed these "essential job functions" during the subject years, or whether any of the employees performed duties that were outside these functions, we give limited regard to this list. We note, however, that the list states that only the Lead PBX Operator, PBX Operator, and Maintenance Engineer perform certain duties in the case of an "emergency".

agreements are entitled to uninterrupted breaks for meals, and, as one of petitioners' witnesses admitted at trial, employees under the culinary workers' agreement are seldom called to work during a meal period. We also know that: (1) Petitioners do not routinely call an employee back to his or her job from a break in case of necessity, but that the employees tend to postpone their breaks until the necessity subsides, (2) petitioners began furnishing the meals to all of their employees because management believed it was unreasonable to require 75 to 80 percent of petitioners' workforce to remain on the premises during their full shifts without offering them a free meal, and (3) petitioners must furnish the meals to their employees free of charge to remain competitive in the industry. These facts add to our belief that either petitioners furnish the meals to their employees for the employees' convenience, or that petitioners furnish the meals to their employees to compensate them for remaining on the premises for their complete shifts.

There may be senior managers who are so indispensable to the operation of the Properties that they would be personally consulted and called to duty when an emergency occurs. On the basis of the record, however, we are unable to determine which, if any, employees are within this category. Petitioners have addressed this factor from an all-or-nothing point of view, and the record does not otherwise allow us to determine who these senior managers are. We decline to sift through the long list of job titles at each Property and speculate as to which employees

are within this group. Suffice it to say that this group is relatively small, and an identification of this group would not affect our holding herein.

We conclude that none of petitioners' employees may exclude the meals from gross income on account of this factor.

### 4. Short Lunch Period With Inability To Eat Elsewhere

An employer furnishes a meal to an employee for a substantial noncompensatory business reason if the employer's business demands that the employee's meal period be short and the employee cannot be expected to eat elsewhere in such a short period of time. Sec. 1.119-1(a)(2)(ii)(b), Income Tax Regs. Such may be the case, for example, if the employer is engaged in a business in which the peak workload occurs during the normal meal periods. Id. Such is not the case when the employer limits the employee's meal period so that the employee may leave work earlier in the day. Id.

Petitioners generally argue that the fact that many of their employees have meal periods of 45 minutes or less means that petitioners have a substantial noncompensatory business reason for furnishing meals to them. We disagree. The mere fact that a meal period is 45 minutes or less does not mean that the value of meals that an employee receives without charge at an employer cafeteria is excludable from gross income under section 119. What is critical to this factor is that the employer's business demand that the employee's meal period be short and that the

employee cannot be expected to eat elsewhere in the short period of time allotted by the employer for a meal.

Petitioners meet neither of these requirements. Varied eating facilities are located near the Properties, and petitioners' employees can receive a quick meal at many of these facilities. Nor does petitioners' business demand that petitioners limit their employees to a meal period of no more than 45 minutes; petitioners' peak workload also does not occur during the normal meal periods. Indeed, petitioners allot many of their employees a meal period of 60 minutes, and the length of the meal periods is not consistent among the Properties. Meal breaks among the Properties range in length from 30 to 60 minutes for employees in the same job classification,[12] and we are unable to discern the need for an employee at one Property to have a shorter meal period than a similar employee at another Property. Insofar as the record discloses, petitioners could lengthen the work hours of an employee if he or she required a meal period longer than 45 minutes.[13] In the absence of persuasive evidence supporting petitioners' assertion that the requirements of their business demand that their employees be limited to a short meal

---

[12] The table shows, for example, that parking attendants receive 60 minutes at Sam's Town and CHC and 30 to 40 minutes at Fremont; hotel clerks and phone operators receive 45 minutes at Stardust and 60 minutes at all other properties; slot floorpersons receive 60 minutes at Fremont and 30 minutes at Stardust and Sam's Town (the period at CHC is unknown).

[13] We note, however, that 45 minutes was not shown to be insufficient time to eat a meal under the facts herein.

period, we conclude that none of petitioners' employees may exclude the meals from gross income on account of this factor.

### 5. Inadequate Eating Facilities

An employer furnishes a meal to an employee for a substantial noncompensatory business reason if the employee could not otherwise secure proper meals within a reasonable meal period. Sec. 1.119-1(a)(2)(ii)(c), Income Tax Regs. Such may be the case, for example, when there are insufficient eating facilities in the vicinity of the employer's premises because the employee works at a remote or isolated locale. See id.; see also Rowan Cos. v. United States, 452 U.S. 247 (1981) (workers on offshore oil rigs); Stone v. Commissioner, 32 T.C. 1021 (1959) (construction workers in Alaska); Olkjer v. Commissioner, 32 T.C. 464 (1959) (construction workers in Greenland). See generally Rev. Rul. 72-385, 1972-2 C.B. 536 (fishermen on schooner); Rev. Rul. 71-267, 1971-1 C.B. 37 (Navy personnel assigned to offshore islands).

Petitioners contend that most of their employees qualify under section 119 because there are insufficient eating facilities near each Property to allow their employees to obtain proper meals during their breaks. Petitioners also contend that they prohibit their employees from leaving the premises during their shifts, except in case of dire emergency, and that petitioners prohibit their nonmanagerial employees from eating in the public restaurants located on the Properties. Petitioners elicited testimony from Mr. Thompson to the effect that no one,

including the employees covered by the Teamsters' agreement, leaves the Properties during breaks.

We are not persuaded by these arguments.  First, we have found as a fact that there are adequate eating facilities around the Properties, and that these facilities are of varied types. The aggregate seating capacity of these facilities is far greater than the seating capacity of each Cafeteria.  Although petitioners ask the Court to find as a fact that their employees cannot eat in the restaurants of other casinos because those restaurants are limited to "guests", we refuse to do so.  We are unpersuaded that petitioners' employees cannot eat in those restaurants if they choose to.

We also are not persuaded that most of petitioners' employees can never leave the Property during their shifts, except in case of dire emergency.  In addition to the fact that no employee was disciplined for leaving the premises during the subject years, and that the Teamsters' agreement provides expressly that the covered employees may leave the premises during meal periods, we are mindful of the testimony of Ms. Burns.  In response to a question asked by petitioners' counsel as to Ms. Burns' knowledge on the distance from Stardust to the Fashion Show Mall, Ms. Burns testified:  "Yes, I've had to run from the Stardust to the Fashion Show Mall on errands before, and to be honest with you, I've had a difficult time getting back in an hour."  Ms. Burns also testified that she did not recall any Stardust employee ever leaving the premises during their breaks,

but, in the same breath, admitted that she has eaten at the Fashion Mall during a break, and that she has run errands at the mall during her breaks. We also note that the labor agreements refer to free meals but are silent on the requirement that employees stay on the premises. Why does not one of these agreements state clearly a prohibition against leaving the property if that was the driving force for the free meals? We conclude that the meals of none of the employees qualify under section 119 because of inadequate eating facilities.

### 6. Food Service Employees

An employer furnishes a meal to an employee for a substantial noncompensatory business reason if the employee is a food service employee and the employee receives the meals for meal periods during which he or she works. Sec. 1.119-1(a)(2)(ii)(d), Income Tax Regs. That the meal is furnished during, immediately before, or immediately after the employee's working hours is irrelevant to this factor. Id.

The parties agree that most of the food service employees, by job description, may exclude their meals under section 119. They disagree, however, that the cocktail waitresses, bartenders, and barbacks are "food service employees". Petitioners contend that these categories of employees are "food service employees" because they are part of petitioners' integrated food and beverage service operation. We disagree. None of these employees work in a restaurant or are connected therewith. The employees in these three job descriptions work mainly in

petitioners' lounges or in the gambling area, supplying gamblers with free alcohol 24 hours a day.  The question, therefore, is whether the serving of alcohol is the serving of food.  We do not believe it is.  We construe the word "food", for this purpose, to mean "Material, usu. of plant or animal origin, containing or consisting of essential body nutrients, as carbohydrates, fats, proteins, vitamins, or minerals, taken in and assimilated by an organism to maintain growth and life."  Webster's II New Riverside University Dictionary 494 (1994).  Alcohol is simply not within this definition.  Indeed, in the case of bartenders, they are treated differently from the other "culinary workers" under the labor agreement that applies thereto.  We conclude that petitioners' cocktail servers, bartenders, and barbacks are not food service employees, and, hence, that they are not entitled to exclude their meals on that account.

### 7.  Promote Morale or Goodwill

An employer furnishes a meal to an employee for a compensatory business reason if the employer furnishes the meal intending to promote the employee's morale or goodwill.  Sec. 1.119-1(a)(2)(iii), Income Tax Regs.

Petitioners furnish the meals to their employees to retain them as employees.  Accordingly, petitioners furnish the meals to promote employee morale and goodwill, and, hence, petitioners have a compensatory business reason in furnishing the meals. Absent a substantial noncompensatory business reason, meals

furnished for a compensatory reason are not excludable from income under section 119.

### 8. Attract Prospective Employees

An employer furnishes a meal to an employee for a compensatory business reason if the employer furnishes the meal intending to attract prospective employees. Sec. 1.119-1(a)(2)(iii), Income Tax Regs.

Petitioners furnish the meals to their employees to attract new employees. Accordingly, petitioners have a compensatory business reason in furnishing the meals and, absent a substantial noncompensatory business reason, the meals are not excludable from income under section 119.

### 9. Compensation Under Contract or Statute

The labor agreements at hand do not explicitly characterize the meals as employee compensation. Our characterization of the meals as compensation, however, is not bound to the language that the parties to an agreement utilize therein. We look to the facts and circumstances of this case to determine whether the actions of the parties to the agreements indicate that the parties intended that the meals be compensation. We answer this question in the affirmative.

We read the record to indicate that one of petitioners' reasons for providing meals to their employees is to fulfill the unions' demand that petitioners provide union employees with meals during their working hours for the primary benefit of the

employees.[14]  Reading the specificity of the meal provisions in the labor agreements, we find that the unions painstakingly went to great lengths in those agreements to assure themselves that casino operators such as petitioners would furnish their union employees with healthful meals during their workday.  Meals provided in such a setting are not furnished to allow an employee to perform his or her job properly.

We also find relevant that the labor agreements provide specifically that all union employees will receive meals upon their completion of a minimum workday.  We are unable to comprehend why a short shift employee covered by the Teamsters' agreement, who is allowed to receive a meal after working 3 hours, must receive that meal in order to perform his or her job properly.  The same is true with respect to an employee who is covered by the operating engineers' agreement and who is summoned to work for 4 hours in an emergency, as well as the employee covered by the same agreement who works more than 2 hours of overtime.  In both cases, the employee earns the right to a meal.  Do these employees really need those meals in order to perform their jobs properly?  We think not.  We conclude that the meals are furnished for a compensatory business reason and, absent a substantial noncompensatory business reason, are not excludable from income under section 119.

---

[14] In this regard, we find unpersuasive the unsupported testimony of Mr. Thompson, that petitioners' provision of employee meals resulted in increased profits.

10.  Miscellaneous

Petitioners set forth three additional arguments to support their claim that they furnish the meals to their employees for a substantial noncompensatory business reason.  First, petitioners argue, they have security concerns in that most of their employees have access to significant amounts of cash, chips, or guests' property as part of their job functions.  In this regard, petitioners contend, they have a substantial noncompensatory business reason for furnishing these employees with meals on the premises because allowing them to leave the premises during their shifts will increase the probability and occurrences of theft. Petitioners also contend that they are concerned that employees who leave the premises for meals will not return timely, being distracted and tempted by the glitter and vices of Las Vegas. Second, petitioners argue, some of their employees wear uniforms at work; thus, petitioners have a substantial noncompensatory business reason for furnishing these employees with meals because the sight of a uniformed employee at the eating establishment of a competitor will tarnish the public's perception of the quality of food served on petitioners' premises.  Third, petitioners argue, some of their employees work the graveyard shift; thus, petitioners have a substantial noncompensatory business reason for furnishing these employees with meals mainly because the climate of the late night does not allow these employees to receive a suitable meal elsewhere.

None of these arguments persuades us that the relevant employees may exclude their meals under section 119. These contentions are not substantial noncompensatory business reasons within the meaning of the regulations. Petitioners' contentions about their security concerns, their employees' uniforms, and the timing of the graveyard shift fail to go to the heart of the convenience of the employer test; namely, that the "employee must accept * * * [the] meals * * * in order properly to perform his duties".[15] Commissioner v. Kowalski, 434 U.S. at 93 (quoting S. Rept. 83-1622, at 190 (1954)). Section 119 requires a closer and better documented connection between the necessities of the employer's business and the furnishing of free meals.

We now turn our attention to whether each of substantially all of petitioners' employees receive meals excludable from gross income under section 119. Respondent asserts that the term "substantially all" means that at least 90 percent of the employees must be able to exclude their meals under section 119. Petitioners counter that the term requires a lower percent.

_____

[15] With respect to the uniforms and the graveyard shift, we have additional concerns. Petitioners allow their employees to travel to and from work in uniform, and employees have worn their uniforms while dining in the restaurants of petitioners' competitors. Moreover, petitioners provide their employees with dressing rooms and storage for safeguarding their nonbusiness attire, and the uniforms worn by most of the employees do not appear to be such that the employees cannot quickly change into nonbusiness attire. With respect to the graveyard shift, we are unable to determine which employees work this shift. Thus, even if we were to assume arguendo that these late night workers were entitled to exclude their meals because of the time of their shift, an assumption which we reject, we would not be able to ascertain which employees fall within this category.

The Court of Appeals for the Ninth Circuit has held in a different context that 68 percent is not "substantially all" as that term is used in a predecessor of section 368 relating to corporate reorganizations. See Pillar Rock Packing Co. v. Commissioner, 90 F.2d 949 (9th Cir. 1937), affg. 34 B.T.A. 571 (1936).

We leave for another day the exact percentage of employees that constitutes "substantially all" within the meaning of section 1.119-1(a)(2)(ii)(e), Income Tax Regs. Petitioners have not established that even 50 percent of their employees received qualifying meals. This is not enough to be substantially all.

Given our conclusion that none of the meals of the employees in question qualify for the section 119 exclusion, we look solely to the employees conceded by respondent to be within section 119 and determine what percentage of all employees at each Property they constitute. Respondent's concessions cover the following numbers of employees:

|  | 1987 | 1988 |
|---|---|---|
| CHC | 450 | 458 |
| Fremont | 427 | 423 |
| Sam's Town | 595 | 626 |
| Stardust | 1,024 | 1,061 |

Respondent's concessions translate into the following percentages:

|  | 1987 | 1988 |
|---|---|---|
| CHC | 44.9 | 43.5 |
| Fremont | 45.6 | 48.2 |
| Sam's Town | 42.4 | 41.5 |
| Stardust | 45.5 | 44.1 |

All of these percentages are less than even 50 percent. Thus, each of substantially all of petitioners' employees may not exclude the meals from their gross incomes, and, hence, all employees may not exclude the meals. It follows that petitioners may deduct only 80 percent of their expenses with respect to the meals, and we so hold. We have considered all arguments made by petitioners for a contrary holding and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.